301 Ga. 702
FINAL COPY

S17A0747.  MORRIS v. THE STATE.

HUNSTEIN, Justice.

Appellant Anthony Bernard Morris was tried and convicted of murder and related offenses in connection with the shooting death of Sidon James.[1]  Morris appeals, claiming that the evidence was insufficient to support his convictions and that the trial court erred during its charge of the jury.  Finding no error, we affirm.

---

[1] On December 7, 2011, a Chatham County grand jury indicted Morris for malice murder (Count 1), felony murder predicated on aggravated assault (Count 2), aggravated assault with a deadly weapon (Count 3), possession of a firearm during the commission of a crime (Count 4), and possession of a firearm by a convicted felon (count 5).

Following a trial held from August 5-7, 2013, a jury found Morris guilty of all charges.  Pursuant to OCGA § 17-10-7 (a), the trial court sentenced Morris to life for malice murder (Count 1) and five years' probation for each weapons charge (Counts 4 and 5) to run consecutively to count 1 but concurrent with each other.  The remaining counts were merged or vacated by operation of law for sentencing purposes.  Morris filed a motion for new trial on August 23, 2013, which was subsequently amended on March 30, 2015, and April 30, 2015.  The Court held a hearing on the motions as amended on May 19, 2015, and denied the same on January 7, 2016.

Morris timely filed a notice of appeal which was docketed to the April 2017 term of this Court and was thereafter submitted for a decision on the briefs.

1.    Viewed in the light most favorable to the jury's verdict, the evidence adduced at trial established that, on September 16, 2011, Morris obtained drugs from Raheem Williams and Sidon James with the promise of future payment. Later that day, when Morris returned to pay for the drugs, Williams brandished a weapon and demanded he pay more than originally owed; Morris complied, handing over $100 at gunpoint. Angry over being robbed, Morris borrowed a 9 mm handgun from a friend and went to a house where Williams and James were known to reside with the intention of shooting Williams. Upon his arrival, Morris entered the residence and brandished the weapon as he confronted James, demanding to know Williams' whereabouts. James refused to answer and begged Morris not to shoot; Morris ignored James' plea and shot him six times, then left to continue his search for Williams. Witnesses to the shooting testified at trial that James was unarmed and was not being aggressive toward Morris at the time of the shooting.

Law enforcement responded to the scene and found James unresponsive on the floor with multiple gunshot wounds. They recovered nine 9 mm shell casings, which were later determined to have been fired from a Glock 9 mm pistol; no gun was recovered from James' person.

2

The medical examiner testified that James sustained six gunshot wounds to his head, torso and extremities which, he concluded, were the cause of James' death; the medical examiner further noted the presence of stippling on two of the wounds — one to the head and one to the abdomen — indicating those were sustained at close to intermediate range.

Morris was arrested later that evening when law enforcement located him in a back yard a few blocks away from the scene of the crime. During his interview, he told law enforcement "I told y'all I was going to keep it 100, it's not a [sic] incident, it's a murder." He told officers that he had been robbed by Williams and James earlier in the day and further admitted that, after having two separate run-ins with Williams and James, he obtained a firearm and went in search of Williams. He admitted that he brandished his weapon the moment he saw James, asked for Williams' location, and thereafter, shot James, claiming that he had acted in self-defense; Morris admitted, however, that he continued to shoot James even after he had fallen to the ground. Morris also remarked to law enforcement that he wished he had shot Williams instead of James since Williams was his original target.

3

On appeal, Morris argues that the evidence relied upon by the State was insufficient to support his convictions because the State failed to prove malice aforethought for malice murder and because the State failed to prove beyond a reasonable doubt that he was not justified in shooting James. We disagree.

When evaluating the sufficiency of evidence, the proper standard for review is whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. See Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). "'This Court does not reweigh evidence or resolve conflicts in testimony; instead, evidence is reviewed in a light most favorable to the verdict, with deference to the jury's assessment of the weight and credibility of the evidence.'" (Citation omitted.) Hayes v. State, 292 Ga. 506, 506 (739 SE2d 313) (2013).

(a) *Sufficient Evidence for Malice Aforethought*

Here, there was sufficient evidence to establish Morris' intent to commit malice murder. Prior to the shooting, Morris acquired a gun and then headed to the house where Williams and James were located in search of Williams. With his weapon drawn, Morris approached James demanding to know Williams' whereabouts. After James refused to reveal Williams' location and begged for

4

his life, Morris shot him numerous times and continued to shoot him even after he had already fallen to the ground. Clearly, this was sufficient evidence to authorize the jury to find that Morris had acted with malice aforethought in shooting James.

(b) *Proof of Lack of Justification Beyond a Reasonable Doubt*

Regarding his allegation that the State failed to prove his acts were not justified beyond a reasonable doubt, Morris relies upon his statement to law enforcement wherein he stated that he saw James make a gesture like he was reaching for a gun prior to shooting him. However, the jury also heard the testimony of eyewitnesses that James was unarmed and not aggressive, that no weapon was located on James' person, and that Morris continued to shoot James after he was on the ground.

> As we have explained many times before, conflicts in the evidence, questions about the credibility of witnesses, and questions about the existence of justification are for the jury to resolve. The jury is free to reject any evidence in support of a justification defense and to accept the evidence that the shooting was not done in self-defense.

(Citations and punctuation omitted.) Anthony v. State, 298 Ga. 827, 829 (785 SE2d 277) (2016). Based on the foregoing, the evidence authorized the jury to

5

find Morris guilty beyond a reasonable doubt of the crimes for which he was convicted.

2.  Morris raises three claims concerning the trial court's charge to the jury. Specifically, Morris alleges that the trial court erred because it: (a) refused to charge the jury regarding Morris' good character; (b) instructed the jury that a person is not justified in using force if that person is attempting to commit, is committing, or is fleeing after the commission of a crime; and (c) violated Morris' right to due process when it gave unclear and confusing instructions regarding murder and self-defense.

"To authorize a requested jury instruction, there need only be slight evidence supporting the theory of the charge." Hicks v. State, 287 Ga. 260, 262 (695 SE2d 195) (2010). "It is a question of law whether the evidence presented is sufficient to authorize the giving of a particular charge." Hamm v. State, 294 Ga. 791, 794 (756 SE2d 507) (2014). "'In reviewing a challenge to the trial court's jury instruction, we view the charge as a whole to determine whether the jury was fully and fairly instructed on the law of the case.'" (Citation omitted.) Allaben v. State, 299 Ga. 253, 259 (787 SE2d 711) (2016). With these principles in mind, we review Morris' claims of trial court error.

6

(a)  *Good Character Instruction*

At the charge conference, Morris requested the trial court give § 3.15.10 of the former version of Georgia's Suggested Pattern Jury Instructions (Criminal) concerning Morris' good character.[2] In denying the request, the trial court found the following:

> Yeah, the pattern contemplates character being brought in as an element of the case. There were various references to the defendant based on the fact that almost all the witnesses, including the police officers, knew the defendant. The fact that they knew him and made an offhand comment in the court's opinion is not sufficient to bring the good character charge, a good character of the defendant charge, into this case. So the court is not going to charge on a character charge.

---

[2] The requested charge read as follows:
When evidence of the good character of the defendant is offered, the jury has the duty to take that testimony, with all other evidence in the case, in determining the guilt or innocence of the defendant. Good character is a positive, substantive fact and may be sufficient to produce in the minds of a jury a reasonable doubt about the guilt of the defendant. You have the duty to take any evidence of general good character with all of the other evidence in the case, and, if in doing so, you should entertain a reasonable doubt about the guilt of the defendant, it would be your duty to acquit. However, if you should believe that the defendant is guilty beyond a reasonable doubt, you would be authorized to convict, despite the evidence about general good character.

Morris argues now, as he did below, that the trial court erred in not giving the good character charge when there was sufficient evidence to support it. We find no error.

Morris did not testify or put on any evidence in his case-in-chief regarding his general reputation for good character. To the extent that good character evidence was presented to the jury, it came by way of non-responsive and inadvertent witness testimony during the State's case-in-chief. Assuming, without deciding, that it was error for the trial court not to give the requested charge under these circumstances, such error would be harmless. "[W]here, as here, it is likely that the jury would not have relied upon the defendant's good character to acquit [him] . . . since the evidence of the defendant's guilt is overwhelming, it is highly probable that the error did not contribute to the jury verdict." Duvall v. State, 259 Ga. 801, 803 (4) (387 SE2d 880) (1990).

(b)  *Self-Defense Instruction*

Morris also requested the trial court give § 3.02.10 of the former version of Georgia's Suggested Pattern Jury Instructions (Criminal) concerning justification. However, defense counsel objected to the trial court charging the jury on the portion of the instruction that reads, "[a] person is not justified in

using force if that person . . . b) is attempting to commit, is committing, or is fleeing after the commission or attempted commission of a felony." The court gave the instruction over Morris' objection.

On appeal, without citing to any authority whatsoever,[3] Morris argues that the trial court's inclusion of this portion of the charge was improper and that the error harmed him at trial. Still, to the extent this could be considered error, it would ultimately be harmless. Mullins v. State, 299 Ga. 681 (4) (791 SE2d 828) (2016)

(c)   *Due Process Claim*

Finally, Morris claims that his right to procedural due process was violated when the trial court used the pattern jury charges for malice murder, justification and self-defense, claiming that these charges were unclear and confusing and improperly shifted the burden of proof. However, Morris requested the trial court give the pattern charges for justification and self-defense; therefore he cannot subsequently complain about alleged errors he helped to induce. Jones v. State, 287 Ga. 770 (4) (700 SE2d 350) (2010).

---

[3] See Supreme Court Rule 22 ("Any enumerated error not supported by argument or citation of authority in the brief shall be deemed abandoned. . . .").

Furthermore, Morris did not object to the trial court's giving of the pattern malice murder charge; pursuant to plain error review, see Brown v. State, 297 Ga. 685 (4) (777 SE2d 466) (2015), we see no error.

Judgment affirmed. All the Justices concur.

Decided August 14, 2017.

Murder. Chatham Superior Court. Before Judge Walmsley.

Barbara N. Lanier, for appellant.

Meg E. Heap, District Attorney, Matthew A. Breedon, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Vanessa T. Meyerhoefer, Assistant Attorney General, for appellee.