310 Ga. 411
FINAL COPY

S20A1081. ALLEN v. THE STATE.
S20A1082. MCCRAY v. THE STATE.


PETERSON, Justice.

Dylon Allen and Zaykives McCray appeal their convictions for malice murder and other offenses in connection with the shooting death of Chiragkumar Patel.[1] Allen argues on appeal that the trial court erred by admitting evidence of a prior robbery and by allowing

---

[1] The crimes occurred on January 15, 2016. In May 2016, a Chattooga County grand jury indicted Allen and McCray for malice murder, two counts of felony murder, armed robbery, three counts of aggravated assault, three counts of possession of a firearm during the commission of a felony, wearing a mask to conceal identity, and simple battery. Following a joint trial held on February 28 through March 3, 2017, a jury found Allen and McCray guilty on all counts. The trial court sentenced Allen and McCray on March 6, 2017, and later amended their sentences on December 16, 2019, sentencing Allen and McCray to life in prison with the possibility of parole for malice murder, a concurrent life term for armed robbery, a consecutive twenty-year term on one aggravated assault count, consecutive five-year terms for two counts of possession of a firearm during the commission of a crime, and one-year concurrent terms for wearing a mask to conceal identity and for simple battery. The trial court merged or vacated the remaining counts. Allen and McCray filed timely motions for new trial, which they later amended. The trial court held a joint hearing on Allen's and McCray's motions for new trial and denied their motions on January 2, 2020. Allen and McCray filed timely notices of appeal. Their cases were docketed to this Court's August 2020 term, consolidated, and submitted for a decision on the briefs.

McCray's out-of-court statements to be used against Allen, and that these errors cumulatively prejudiced him. McCray argues that the trial court erred by failing to ensure that McCray understood his right to be present at bench conferences and failing to instruct the court reporter to transcribe the entirety of voir dire.

We affirm Allen's convictions because any errors in admitting evidence of a prior robbery and McCray's out-of-court statements were harmless, even considered cumulatively. We also affirm McCray's convictions because the record shows that McCray elected not to attend bench conferences despite being told that he could, and the trial court was not required to order the court reporter to transcribe voir dire.

The evidence presented at the joint trial showed the following.[2] In mid-January 2016, McCray told his then-girlfriend, Jade McCall, that he was going to rob a store near a family member's house in Summerville. McCray said that he was going to commit the robbery

---

[2] Because this case requires an assessment of the harmful effect of alleged trial court errors, we lay out the evidence in detail and not only in the light most favorable to the verdicts.

with his "brother," which McCall understood to mean Allen.

On the evening of January 15, 2016, McCray arranged for Shannon Coalson to drive him from Rome to Summerville. McCray arrived with Allen at Coalson's home in Rome, and Coalson drove the men, along with her roommate, Thyis Green, to Summerville in her red Chrysler Sebring. Once in Summerville, Coalson backed into the driveway of an abandoned-looking house that McCray said belonged to his uncle. McCray and Allen exited the car and walked toward Melanie Inn, a nearby convenience store.

A video and audio recording from Melanie Inn's surveillance system showed two masked men entering the store around 9:11 p.m. At trial, McCall identified the voices of the masked men from the recording as belonging to Allen and McCray. One of the men shoved a customer to the ground,[3] while the other fired a shot at Patel, the store clerk, striking him in the abdomen and causing him to fall to the floor. Allen and McCray jumped over the counter, began filling

---

[3] This action formed the basis of the simple battery charge against Allen and McCray.

a blue bag with items from behind the counter, and asked Patel where the money was located. Patel did not respond, so the men began to beat Patel and continued to do so as they threatened to kill Patel if he did not open the cash register. Surveillance video showed one of the men who had a triangular birthmark on his right wrist similar to McCray's go through Patel's pockets to remove money. The men took Black and Mild cigars, Newport cigarettes, a cigarette lighter, and Doritos chips from the store. Patel later died from his gunshot wound.

The surveillance recording showed the masked men leaving the store around 9:15 p.m., and one of the masked men pointed a gun at Kaine Darden,[4] who was approaching the store. Several minutes earlier, Darden had noticed a burgundy-colored Sebring parking in the driveway of an abandoned house on Fourth Street and two men walking toward the Melanie Inn. After the confrontation, Darden observed the men running back in the direction of the car parked at

---

[4] This action served as the basis for the aggravated assault count that did not merge with the malice murder conviction.

the abandoned house.

Allen and McCray were gone for less than ten minutes before returning to Coalson's car with a blue bag containing Black and Mild cigars, cigarettes, and Doritos. Green observed McCray with a gun. Allen and McCray directed Coalson to return to Rome. McCray gave Coalson money and Black and Mild cigars and admitted that he and Allen had robbed the convenience store in Summerville. McCray also later told McCall that he and Allen robbed the convenience store.

Sometime later, police pulled over Coalson's car because it matched the description given by witnesses; the car was being driven by Coalson's boyfriend at the time. Coalson's boyfriend gave police consent to search the car, and during the search, officers found an empty Doritos bag and Black and Mild cigars in the car. Police also searched an apartment where Allen often stayed and found Black and Mild cigars that had McCray's fingerprints, a carton of Kool cigarettes that also had McCray's fingerprints and had a tax stamp of Melanie Inn's wholesaler (who sold those cigarettes to only

two other locations in Georgia), pennies wrapped in the same paper used at Melanie Inn, and a cigarette lighter that was similar to the type taken from Melanie Inn.

After he was arrested, Allen wrote to his girlfriend saying that he had to come up with an alibi for the night of the murder and instructing her to say that they were watching a movie from 8:00 to 10:00 p.m. Surveillance video showed that Allen was with McCray and Coalson at a McDonald's restaurant in Rome at 9:55 p.m. Allen admitted to a cellmate that he robbed Melanie Inn and shot the clerk.

1. Neither Allen nor McCray challenges the sufficiency of the evidence, but we have independently reviewed the evidence presented at trial and conclude that the evidence was legally sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that they were guilty of the crimes of which they were convicted. See *Jackson v. Virginia*, 443 U.S. 307, 319 (99 SCt

2781, 61 LE2d 560) (1979).[5]

2. Allen argues that the trial court erred in allowing the State to introduce other acts evidence under OCGA § 24-4-404 (b) ("Rule 404 (b)") that purportedly showed Allen's participation in a robbery in September 2014. We conclude that any error was harmless.

Under Rule 404 (b), "[e]vidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith[,]" but other acts evidence is admissible for other purposes, including to prove intent, motive, and absence of mistake or accident. To admit evidence under Rule 404 (b), the State must show three things: (1) that the evidence is relevant to an issue in the case other than the defendant's character; (2) that the probative value of the evidence is not substantially outweighed by its undue prejudice; and (3) that there is sufficient proof for a jury to find by a preponderance of the evidence that the

---

[5] We remind litigants that the Court will end its practice of considering sufficiency sua sponte in non-death penalty cases with cases docketed to the term of court that begins in December 2020. See *Davenport v. State*, 309 Ga. 385, 399 (4) (846 SE2d 83) (2020). The Court began assigning cases to the December term on August 3, 2020.

7

defendant committed the other act. See *Kirby v. State*, 304 Ga. 472, 479 (819 SE2d 468) (2018). We review the trial court's admission of other acts evidence for abuse of discretion. See id.

At a pre-trial hearing regarding the admissibility of the other acts evidence, the State introduced evidence regarding a September 2014 robbery of a gas station in Rome. Three black males wearing masks, two of whom were armed, severely beat the store clerk, yelled and cursed at the clerk, forced the clerk to open the register, and took money from the register. While the robbers were emptying the cash register, one of the masked men put his gun on the counter and left it there when the group exited the store. Allen's fingerprint was found on the magazine of the abandoned gun, and the man who left that gun matched Allen's physical description.

The trial court admitted the other acts evidence for the purpose of showing Allen's intent. At trial, the State called a police officer who investigated the 2014 robbery and a lab technician who testified about the fingerprint analysis, and the State introduced into evidence the surveillance video recording of the robbery.

8

On appeal, Allen challenges only the second and third prongs of the Rule 404 (b) test. On the second prong, we note that the 2014 robbery was carried out in a manner similar to the charged crimes here, which occurred almost two years later. But given the strong evidence against Allen, there was not a significant prosecutorial need to use the other acts evidence to prove intent to kill or rob, when that issue was not meaningfully disputed. See *Jackson v. State*, 306 Ga. 69, 79 (2) (b) (ii) (829 SE2d 142) (2019). But even if the probative value was low, we need not determine whether any unfair prejudice substantially outweighed that low probative value, because it is highly probable that the other acts evidence did not change the outcome of the case. Likewise, as to the third prong, even if there was insufficient evidence to establish by a preponderance of the evidence that Allen committed the 2014 robbery, any error in admitting the 2014 robbery evidence was harmless.

Erroneous evidentiary rulings are subject to a harmless error test. See *Moore v. State*, 307 Ga. 290, 293 (2) (835 SE2d 610) (2019). For a nonconstitutional ruling like the one at issue here, the test for

9

determining harmless error is whether it is highly probable that the error did not contribute to the verdict. See *Smith v. State*, 299 Ga. 424, 431-432 (2) (d) (788 SE2d 433) (2016). In conducting that analysis, we review the record de novo and weigh the evidence as we would expect reasonable jurors to have done. See *Moore*, 307 Ga. at 293 (2).

Here, the evidence against Allen was strong. Coalson said she drove McCray and Allen to a location near the Melanie Inn, McCray and Allen exited the car and walked in the direction of the convenience store, and they returned about ten minutes later carrying items that matched items taken during the robbery. Many of these items were later found in an apartment where Allen often stayed. Video surveillance showed one masked man pushing a Melanie Inn customer to the floor while the other shot Patel. The video surveillance also showed one of the masked men pointing a gun upon exiting the store, and Darden testified that the weapon was pointed at him. McCray's then-girlfriend positively identified Allen's and McCray's voices as belonging to the masked robbers, and

Allen admitted to a cellmate that he shot and killed the clerk while robbing the Melanie Inn. Allen attempted to have his girlfriend fabricate an alibi by saying they were together watching a movie during the robbery, while surveillance video showed that he was with McCray and Coalson at a McDonald's restaurant soon after the robbery. Given this evidence, it is highly probable that any error in admitting the other acts evidence did not contribute to the verdicts. See *Williams v. State*, 302 Ga. 147, 153-155 (3) (805 SE2d 873) (2017) (any error in admission of other acts was harmless given overwhelming evidence against defendant).

3. Allen next argues that the trial court committed plain error by allowing McCall to testify about McCray's out-of-court statement that he robbed the store with Allen and by allowing an investigator to repeat the statement in recounting an interview with McCall. See OCGA § 24-1-103 (d) (providing for plain error review of alleged evidentiary errors that were not preserved for ordinary review by a timely objection at trial). Allen acknowledges that McCray's statement was admissible against McCray himself, but argues that

11

McCray's statement was not admissible against Allen because it was hearsay and did not fit within a hearsay exception. The State argued below that the statement fell within the co-conspirator hearsay exception under OCGA § 24-8-801 (d) (2) (E) ("Rule 801 (d) (2) (E)"), but now concedes that the trial court erred in admitting the statement under that exception based on our decision in *State v. Wilkins*, 302 Ga. 156 (805 SE2d 868) (2017), which was decided after Allen and McCray's trial. The State argues, however, that the trial court's error did not amount to plain error due to the strength of the other admissible evidence of guilt. Allen's claim fails.

To establish plain error, Allen "must point to an error that was not affirmatively waived, the error must have been clear and not open to reasonable dispute, the error must have affected his substantial rights, and the error must have seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Denson v. State*, 307 Ga. 545, 547-548 (2) (837 SE2d 261) (2019) (citation and punctuation omitted). Whether an error is clear or obvious under this test is assessed at the time of the appellate

12

court's review. See *Lyman v. State*, 301 Ga. 312, 317 (2) (800 SE2d 333) (2017). To show that a clear error affected his substantial rights, Allen must make an "affirmative showing that the error probably did affect the outcome below." *McKinney v. State*, 307 Ga. 129, 135 (2) (b) (834 SE2d 741) (2019) (citation and punctuation omitted). If Allen fails to meet one element of the plain error test, his claim fails. See *Denson*, 307 Ga. at 548 (2).

Under *Wilkins*, hearsay statements that implicate a co-conspirator but do not advance any object of the conspiracy, such as statements that merely "spill the beans" about the conspiracy, are not admissible under Rule 801 (d) (2) (E). See *Wilkins*, 302 Ga. at 159-162. Even assuming that the trial court erred in applying Rule 801 (d) (2) (E) based on *Wilkins*, however, Allen cannot establish that the error "affected his substantial rights," because he has not made an affirmative showing that the error probably affected the outcome of his trial. See *McKinney*, 307 Ga. at 135 (2) (b).

Although Allen challenges McCray's statement to McCall, who then repeated it to an investigator, he did not challenge McCray's

statement to Coalson in which McCray admitted that he and Allen committed the robbery. And the challenged statement was not only cumulative of McCray's unchallenged statement to Coalson, it was also cumulative of Allen's own statement to a cellmate admitting his participation in the crime. See *Anglin v. State*, 302 Ga. 333, 336 (2) (806 SE2d 573) (2017) ("[T]he erroneous admission of hearsay is harmless where substantial, cumulative, legally admissible evidence of the same fact is introduced."); *Rutledge v. State*, 298 Ga. 37, 40 (2) (779 SE2d 275) (2015) (no harm from admission of hearsay that was "largely cumulative" of other properly admitted testimony). Because the challenged statement was cumulative of other unchallenged evidence and, as discussed above, the evidence against Allen was strong, his plain error claim fails. See *Hampton v. State*, 308 Ga. 797, 802 (2) (843 SE2d 542) (2020) (rejecting plain error claim regarding co-defendant's out-of-court statements because any error in admitting the statements was harmless where the statements were cumulative of appellant's confession to others that he committed the crimes); *Tyner v. State*, 305 Ga. 326, 331 (4) (825

SE2d 129) (2019) (appellant could not show that admission of hearsay affected his substantial rights given the overwhelming evidence of his guilt); *Davis v. State*, 302 Ga. 576, 584 (4) (805 SE2d 859) (2017) (concluding that even if a hearsay statement "was deemed to be outside the co-conspirator exception to hearsay, its admission into evidence was harmless as it was merely cumulative of other evidence at trial").

4. Allen argues that the cumulative effect of the two trial court errors argued above prejudiced him. We disagree.

At least as to evidentiary issues, this Court must "consider collectively the prejudicial effect, if any, of trial court errors, along with the prejudice caused by any deficient performance of counsel." *State v. Lane*, 308 Ga. 10, 17 (1) (838 SE2d 808) (2020). We assumed above that the trial court erred in admitting the other acts evidence and that the trial court's error in admitting McCray's hearsay statement was clear error. We have yet to decide how multiple standards for assessing prejudice may interact under cumulative review of different types of errors, see id. at 21 (4), and again we

15

need not do so here, because Allen's claims fail under any of the standards. See *Woodard v. State*, 296 Ga. 803, 810-811 (2) (b) n.5 (771 SE2d 362) (2015) (in examining whether a defendant has been harmed by a legal error or by ineffective assistance of counsel, we review the record de novo and weigh the evidence as we would expect reasonable jurors to have done); see also *Bozzie v. State*, 302 Ga. 704, 708 (2) (a) (808 SE2d 671) (2017) (explaining that nonconstitutional harmless error review is similar to determining prejudice under plain error review, in that we consider whether the error affected the outcome of the trial).[6]

It is not at all probable that the collective effect of the assumed errors harmed Allen. As discussed above, the evidence against Allen was very strong. Given this strong evidence, which Allen fails to undermine on appeal, it is highly unlikely that the jury here was swayed by the other acts evidence that Allen may have committed

---

[6] "For nonconstitutional harmless error, the State has the burden to show that it was highly probable that the error did not contribute to the verdict. But to establish plain error, a defendant has the burden of making an affirmative showing that the error probably did affect the outcome below." *Bozzie*, 302 Ga. at 708 (2) (a) (citations and punctuation omitted).

another robbery even when considered in combination with McCray's statements implicating Allen in this robbery. See *Davenport v. State*, 309 Ga. 385, 391 (3) (846 SE2d 83) (2020) (cumulative effect of presumed errors in admitting other acts evidence and hearsay evidence did not collectively harm the defendant where the evidence of guilt was very strong); see also *Daughtry v. State*, 296 Ga. 849, 862 (2) (k) (770 SE2d 862) (2015) (cumulative effect of trial counsel's errors did not harm appellant given the overwhelming evidence of guilt).

5. McCray argues that the trial court erred in failing to explain adequately to him that he had the right to be present during bench conferences during voir dire, jury selection, and other unspecified portions of the trial. He argues that, because the trial court did not ensure that he knew of this right, he could not be found to have waived it. McCray's claim fails.

Under both the federal and state Constitutions, a criminal defendant has a right to be present during critical stages of his trial. See *Illinois v. Allen*, 397 U.S. 337, 338 (90 SCt 1057, 25 LE2d 353)

17

(1970); *Brewner v. State*, 302 Ga. 6, 9-10 (II) (804 SE2d 94) (2017). A "critical stage" is defined as "one in which a defendant's rights may be lost, defenses waived, privileges claimed or waived, or one in which the outcome of the case is substantially affected in some other way." *Fortson v. State*, 272 Ga. 457, 458 (1) (532 SE2d 102) (2000) (citation and punctuation omitted). Bench conferences typically involve purely legal or logistical issues, and thus generally do not qualify as "critical stages" of a criminal proceeding. See *Brewner*, 302 Ga. at 10 (II); *Heywood v. State*, 292 Ga. 771, 774 (3) (743 SE2d 12) (2013). And as with other rights, a defendant is free to waive the right to be present. See *Ward v. State*, 288 Ga. 641, 646 (4) (706 SE2d 430) (2011). We have stated that

> [t]he right is waived if the defendant personally waives it in court; if counsel waives it at the defendant's express direction; if counsel waives it in open court while the defendant is present; or if counsel waives it and the defendant subsequently acquiesces in the waiver.

Id. (citation and punctuation omitted).

McCray's claim fails for several reasons. First, McCray does not identify any specific bench conferences that constituted a critical

18

stage, nor does he point to any evidence showing what was discussed.[7] This claim, therefore, does not present a ground for a new trial. See *Daughtie v. State*, 297 Ga. 261, 267 (5) (773 SE2d 263) (2015) (rejecting claim where nothing in the record indicated the subject matter of the bench conference, and counsel could only speculate as to what may have been discussed).

Second, even if any of the bench conferences constituted a critical stage, and McCray had a right to be present as a result, the record shows that he was sufficiently informed of his right and acquiesced in his absence. The available record from voir dire shows that trial counsel confirmed to the court that he informed McCray about the right to listen in on bench conferences. And the trial transcript shows that, on at least two occasions, McCray was

---

[7] McCray argues that he does not even know if bench conferences occurred during voir dire or jury selection because these proceedings were not transcribed. Although not fully transcribed, parts of the jury selection process were transcribed, and that record shows several bench conferences. The trial itself was fully transcribed, but McCray does not point to a single instance at trial of a bench conference that addressed matters such that the conference would have constituted a critical stage, nor did he call trial counsel at the motion for new trial hearing to provide any evidence as to what might have been discussed at the bench conferences.

advised by the trial court that he could approach the bench any time the attorneys did. McCray was in the courtroom and fully aware of his right to participate in the bench conferences, and his decision not to participate shows acquiescence, at a minimum. See *Murphy v. State*, 299 Ga. 238, 241 (2) (787 SE2d 721) (2016) ("Acquiescence may occur when counsel makes no objection and a defendant remains silent after he or she is made aware of the proceedings occurring in his or her absence.").

6. McCray next argues that the trial court erred in failing to instruct the court reporter to transcribe the entirety of voir dire. McCray argues that the plain terms of OCGA § 17-8-5 (a) require a court reporter to take down or record the entirety of voir dire. But our precedent holds otherwise for non-death penalty cases like McCray's, and he offers no compelling reason to overturn that precedent.

OCGA § 17-8-5 (a) provides that "[o]n the trial of all felonies the presiding judge shall have the testimony taken down and, when directed by the judge, the court reporter shall exactly and truly

record or take stenographic notes of the testimony and proceedings in the case, except the argument of counsel." In *State v. Graham*, 246 Ga. 341 (271 SE2d 627) (1980), this Court evaluated former Code Ann. § 27-2401, the predecessor statute to OCGA § 17-8-5 (a); the old statute is materially identical to the current statute at issue here.[8] There, the defendant in a non-death penalty case argued that voir dire was a "proceeding" under the statute and that, therefore, the voir dire should be reported and transcribed. *Graham*, 246 Ga. at 342 (noting that voir dire must be made part of record in death penalty cases). This Court held that the term "proceedings" referred to "objections, rulings and other matters which occur during the course of the evidence as well as any post-trial procedures," and that the statute's requirement was met in that case because the record contained the objection and court ruling made during voir dire. Id.

---

[8] The General Assembly made a few purely stylistic changes, removing several commas, in enacting OCGA § 17-8-5 (a), but otherwise the text remained the same. Compare former Code Ann. § 27-2401 ("On the trial of all felonies the presiding judge shall have the testimony taken down, and, when directed by the judge, the court reporter shall exactly and truly record, or take stenographic notes of, the testimony and proceedings in the case, except the argument of counsel.").

at 342-343. We also stated that if a defendant wants a more complete record of voir dire, he must make a specific request to that effect. Id. This holding has been reiterated many times. See, e.g., *McFarlane v. State*, 291 Ga. 345, 346 (2) (729 SE2d 349) (2012); *Walden v. State*, 289 Ga. 845, 849 (2) (717 SE2d 159) (2011); *Bryant v. State,* 270 Ga. 266, 271 (4) n.18 (507 SE2d 451) (1998); *Brinkley v. State*, 320 Ga. App. 275, 280 (4) (739 SE2d 703) (2013); *Vaughn v. State*, 173 Ga. App. 716, 718-719 (7) (327 SE2d 747) (1985).

McCray argues that *Graham*'s interpretation of "proceedings" is no longer good law, citing several instances in which the United States Supreme Court and our Court of Appeals have referred to voir dire as a proceeding. He argues that this common usage shows that the plain meaning of "proceedings" as used in OCGA § 17-8-5 includes voir dire. But none of the decisions he cites actually held anything about when voir dire must be recorded. We find no compelling reason to reconsider *Graham*'s statutory construction.[9]

---

[9] The language at issue in *Graham* and here has been part of Georgia law since 1876. See Ga. L. 1876, p. 133, § 1 (authorizing superior court judges

See *Etkind v. Suarez*, 271 Ga. 352, 358 (5) (519 SE2d 210) (1999) ("Even those who regard 'stare decisis' with something less than enthusiasm recognize that the principle has even greater weight where the precedent relates to interpretation of a statute." (citation and punctuation omitted)); see also *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 736 (97 SCt 2061, 52 LE2d 707) (1977) ("[W]e must bear in mind that considerations of stare decisis weigh heavily in the area of statutory construction, where Congress is free to change this Court's interpretation of its legislation.").

*Judgments affirmed. All the Justices concur, except Warren, J., not participating.*

---

to appoint a reporter, or stenographic recorder, who had the duty "when directed by the Judge . . . to exactly and truly record, or take stenographic notes of, the testimony and proceedings in the case tried, except the argument of counsel"). In determining the meaning of "proceedings," the *Graham* Court considered the historical context that revealed that voir dire had never been made part of the record until this Court's decision in *Owens v. State*, 233 Ga. 869 (214 SE2d 173) (1975), where this Court held that it was required for death penalty cases under United States Supreme Court precedent.

Decided November 16, 2020.

Murder. Chattooga Superior Court. Before Judge Graham.

*Steven A. Miller, Christina R. Cribbs*, for appellant (case no. S20A1081).

*Karen H. Brouse*, for appellant (case no. S20A1082).

*Herbert E. Franklin, Jr., District Attorney, Kevin J. Baugh, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Michael A. Oldham, Assistant Attorney General*, for appellee.