312 Ga. 317
FINAL COPY

S21A0817.  ORR v. THE STATE.

COLVIN, Justice.

Following a jury trial, Keilan Laron Orr was convicted of felony murder and possession of a firearm during the commission of a felony in connection with the shooting death of Lamario Majors.[1]  On appeal, Orr claims that the evidence presented at his trial was

---

[1] On October 12, 2018, a Floyd County grand jury indicted Orr for malice murder (Count 1); one count of felony murder predicated on three underlying felonies — aggravated assault with intent to murder, aggravated assault with a deadly weapon, and aggravated battery (Count 2); aggravated assault with a deadly weapon (Count 3); aggravated assault with intent to murder (Count 4); aggravated battery (Count 5); and possession of a firearm during the commission of a felony (Count 6).  At a jury trial held from October 4 through October 9, 2019, Orr was found guilty of felony murder, aggravated assault with a deadly weapon, aggravated battery, and the firearm charge.  The jury could not reach a unanimous verdict on the malice murder and aggravated assault with intent to murder charges; these counts were later nolle prossed by the trial court.  Orr was sentenced to life in prison for felony murder and five consecutive years for the firearm charge.  The remaining counts were merged with the felony murder for sentencing purposes.
        Orr timely filed a motion for new trial on November 21, 2019, which he amended on June 5, 2020.  After a hearing, the trial court denied the motion as amended on December 2, 2020.  Orr timely filed a notice of appeal.  The appeal was docketed to the April 2021 term of this Court and submitted for a decision on the briefs.

insufficient to support his convictions and that the trial court erred by failing to charge the jury on voluntary manslaughter. For the reasons set forth below, we affirm.

1. Orr contends that the evidence presented at trial was constitutionally insufficient to sustain his convictions. When evaluating the sufficiency of evidence as a matter of constitutional due process, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis omitted.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). "This Court does not reweigh evidence or resolve conflicts in testimony; instead, evidence is reviewed in a light most favorable to the verdict, with deference to the jury's assessment of the weight and credibility of the evidence." (Citation and punctuation omitted.) *Hayes v. State*, 292 Ga. 506, 506 (739 SE2d 313) (2013).

Viewed in this light, the evidence presented at trial showed that, in July 2018, Majors was living in a house with his co-worker,

Ricky McGinnis. Orr was living in his car, which he was permitted to park outside of McGinnis's Floyd County residence. In the days leading up to the shooting, Orr complained to McGinnis and another witness, Kaylee Jones, that personal property was missing from his car. Orr accused Majors of stealing the property.[2]

On July 25, 2018, Orr told McGinnis and Jones that he "wanted something done" about the theft and that he wanted to fight Majors. He also threatened that someone would "shoot up" McGinnis's mother's house if the issue was not resolved. Orr then went to Majors's room to speak with him about the theft. During the conversation, Orr demanded to search the room and Majors's pockets for the missing property. Majors, who was on a video call with his girlfriend, Kimberly Stinson, agreed. When Orr failed to find the missing property, Majors said, "I told you, there ain't nothing in here," to which Orr said, "Okay. Cool," and left.

Approximately 15 minutes later, Jones saw Orr return to

---

[2] There was a discrepancy in the testimony presented at trial as to whether the stolen property was a firearm or $1,000 in cash.

McGinnis's house with a gun and head straight for Majors's room. Jones believed that Orr wanted to start a fight, so she followed Orr with the intention of warning Majors. Jones saw Orr burst through the door to Majors's bedroom. Orr shot Majors three times while he was still on the video call with Stinson, killing him. Orr then fled the house, taking the firearm with him. No witnesses saw Majors with a weapon prior to the shooting. Both Jones and Stinson testified that Majors did not stand up or attempt to defend himself until after Orr fired the first shot.

Orr was arrested and brought to the Rome Police Department, where he gave a statement to law enforcement officials. Orr explained that he felt Majors was being "disrespectful" during their conversation and that he grew frustrated because he believed Majors was lying about the theft. However, Orr admitted that the conversation between him and Majors never became loud or heated. Instead, Orr said that Majors stated, "[O]h, you ain't going to shoot me," when Orr brandished his gun, and that Majors began making fast movements with his hands, which Orr believed was Majors's

4

attempt to reach for a weapon. Orr stated that he shot Majors in self-defense because "it was a life-or-death situation."

Orr alleges that the evidence was insufficient to support his convictions because the State failed to disprove his claim of self-defense beyond a reasonable doubt. However, based on the evidence presented at trial and recounted above, the jury was authorized to reject Orr's theory of self-defense and find him guilty beyond a reasonable doubt of the crimes of which he was convicted. See *Jackson*, supra, 443 U. S. at 319 (III) (B). See also *Morris v. State*, 301 Ga. 702, 705 (1) (b) (804 SE2d 42) (2017) (reiterating that "questions about the existence of justification are for the jury to resolve. The jury is free to reject any evidence in support of a justification defense and to accept the evidence that the shooting was not done in self-defense") (citation and punctuation omitted). Accordingly, the evidence was sufficient to support Orr's convictions.

2. Orr argues that the trial court erred by failing to instruct

the jury on voluntary manslaughter.[3] At trial, the State objected to Orr's requested charge on voluntary manslaughter, arguing that there was no evidence that Orr's action was solely the result of a sudden, violent, and irresistible passion. In response, defense counsel argued:

> Well, Your Honor, quotes from Mr. Orr alone, he said that he was — Mr. Majors was being disrespectful. He got frustrated. And, then, Kaylee Jones also testified that they had been arguing all day. The situation had festered throughout a week actually, and right before the shooting, I know she testified that Mr. Orr told Mr. Majors, let's fight, and Mr. Majors said, we can fight at — I mean, even saying we're going to fight, in and of itself . . . shows passion, anger . . . and, then, after that, he pulls the gun.

Defense counsel also noted that, at the time of the shooting, Orr was homeless and that the ongoing feud was about "the last little bit of

---

[3] OCGA § 16-5-2 (a) states:
> A person commits the offense of voluntary manslaughter when he causes the death of another human being under circumstances which would otherwise be murder and if he acts solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person; however, if there should have been an interval between the provocation and the killing sufficient for the voice of reason and humanity to be heard, of which the jury in all cases shall be the judge, the killing shall be attributed to deliberate revenge and be punished as murder.

. . . money [Orr] had." The trial court declined to give the charge, ruling that there was no evidence that Orr's actions were the result of a sudden, violent, and irresistible passion. Counsel objected to the trial court's ruling and, on appeal, argues that the ruling was erroneous. We disagree.

"To authorize a requested jury instruction, there need only be slight evidence to support the theory of the charge, and the necessary evidence may be presented by the State, the defendant, or both." (Citation and punctuation omitted.) *Collins v. State*, 308 Ga. 515, 519 (2) (842 SE2d 275) (2020). "Whether the evidence presented is sufficient to authorize the giving of a charge is a question of law." (Citation and punctuation omitted.) *McClure v. State*, 306 Ga. 856, 863 (1) (834 SE2d 96) (2019). Here, we agree with the trial court that there was not slight evidence to support the requested charge on voluntary manslaughter.

Pursuant to OCGA § 16-5-2 (a), in order to support a charge on voluntary manslaughter, there must be at least slight evidence that the defendant "act[ed] solely as the result of a sudden, violent, and

7

irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person[.]" Id. This is an objective standard, and "we must evaluate the alleged provocation evidence with respect to its effect on a reasonable person, putting aside any peculiar response Appellant may have had." *Johnson v. State*, 297 Ga. 839, 842 (2) (778 SE2d 769) (2015). Orr argues that he has met this standard because the evidence showed that he believed Majors had stolen money from him, that the pair had been arguing over the stolen money for a few days, that Majors had been "disrespectful" when Orr confronted him about the stolen money, and that Orr became frustrated during their conversation because he believed Majors was lying. This, however, is not enough to constitute slight evidence that Orr had acted as the result of a sudden, violent, and irresistible passion. As this Court has previously explained, "arguments over money are not serious provocations requiring a voluntary manslaughter charge," id. at 844 (2), and "words alone, regardless of the degree of their insulting nature, will not in any case justify the excitement of passion so as to

reduce the crime from murder to manslaughter where the killing is done solely on account of the indignation aroused by use of opprobrious words," *Hudson v. State*, 308 Ga. 443, 446 (2) (a) (841 SE2d 696) (2020) (citation, punctuation and emphasis omitted). See also *Smith v. State*, 296 Ga. 731, 737 (3) (770 SE2d 610) (2015) ("[N]either fear that someone is going to pull a gun nor fighting are the types of provocation which demand a voluntary manslaughter charge."). Because Orr points only to words and an ongoing argument over money, we conclude that the trial court properly found that there was no evidence that Orr acted as a result of a sudden, violent, and irresistible passion in order to support a voluntary manslaughter charge.

*Judgment affirmed. All the Justices concur.*

Decided August 24, 2021.

Murder. Floyd Superior Court. Before Judge Durham.

*Jonathan R. Hamrick, Sean J. Lowe, David L. Lumpkin*, for appellant.

*Leigh E. Patterson, District Attorney, Mary Beth Gregoire, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Meghan H. Hill, Assistant Attorney General*, for appellee.