312 Ga. 684
FINAL COPY

S21A0813.  HARPER v. THE STATE.

WARREN, Justice.

Grady Harper, Jr., was tried by a Floyd County jury and convicted of malice murder and other crimes in connection with the shooting death of John Allen.  On appeal, Harper contends that the trial court erred when it failed to instruct the court reporter to transcribe the entirety of the jury selection proceedings, including voir dire, and that the evidence presented at trial was insufficient to disprove beyond a reasonable doubt his justification defense.  Seeing no error, we affirm.[1]

---

[1] Allen was killed on June 16, 2018.  On September 14, 2018, a Floyd County grand jury indicted Harper, charging him with malice murder, felony murder predicated on aggravated assault and aggravated battery, aggravated battery, aggravated assault with intent to murder, aggravated assault with a deadly weapon, possession of a firearm during the commission of a felony, and possession of a firearm by a convicted felon.  Harper was tried in March 2019, and a jury found him guilty of all counts.  On March 22, 2019, the trial court sentenced Harper to life in prison without the possibility of parole for malice murder, a consecutive five years in prison for possession of a firearm during the commission of a felony, and a concurrent five years in prison for the felon-in-possession offense.  The other counts were merged or vacated by operation

1. Viewed in the light most favorable to the verdicts, the evidence presented at trial showed the following. On the day before the shooting, Allen and his friend, Wendy Williams, went to a convenience store, where they encountered Harper's brother, Jamal Harper ("Jamal"), who had a brief but unfriendly exchange of words with Allen. Later that evening, Jamal sent a Facebook message to Williams, saying, "Tell that pu\*\*y ni\*\*a I want my one in a.m." Williams testified that "one" meant a "one-on-one fight."

The following day, Williams and Allen were sitting in a car near Allen's house when Harper and Jamal walked up. Allen and the Harper brothers discussed a potential fight between Jamal and Allen. Harper had a gun in his hand, but he laid the gun on the road and said that he did not intend to shoot Allen — he just wanted to make sure Jamal would not "get jumped." Williams testified that Allen's behavior during the conversation "showed that he really

---

of law. Harper timely filed a motion for a new trial on March 28, 2019, and he amended it through new counsel on November 10, 2020. After a hearing, the trial court denied the motion on November 23, 2020. Harper filed a timely notice of appeal on December 10, 2020, and the case was docketed in this Court to the April 2021 term and submitted for a decision on the briefs.

didn't want to fight."

After talking for some time, Allen and Jamal started fighting. Williams testified that, after the men "swung" at each other several times, she heard four or five gunshots. Allen then said, "damn, [Harper] shot me," and collapsed, while the Harper brothers "took off." Williams testified that Allen did not have a weapon on him at any point during the fight, and she identified Harper in court as the shooter. Another witness at the scene, Johnny Whatley, likewise testified that the fight was "just a scuffle"; he did not remember who hit who, but recalled that both Jamal and Allen were "swinging and they fell in the ditch." Whatley testified that both men were on the ground when Allen was shot, and that Allen got up, said, "[Harper] shot me," and fell. Whatley did not see Allen with a gun.

A more detailed account of the fight and shooting came from Jamal himself, who testified for the State. Jamal testified that Allen was the one who instigated the fight and that Allen invited Jamal to Allen's back yard for that purpose. Once in the back yard, Jamal and Allen "danced around" for 30 to 45 minutes but did not attempt

3

to punch each other. Jamal testified that he eventually tried walking away from the fight, but Allen hit him in the nose, knocking him into a ditch, then got on top of him and hit Jamal again. Jamal then slid out from under Allen, and both men stood up. According to Jamal, at that point, Harper shot Allen: "I hate to say it. My brother shot him, man. He shot him, man. I hate to say it, but he shot him, man." Jamal acknowledged that, in the moments before the shooting, no one was "swinging," the fight "was over with," and Jamal's only injuries were some "scratches" on his back and that his "nose hurt a little bit." Jamal also testified that Allen did not have a gun on him, that Jamal "did not want [Harper] to shoot" Allen, and that the shooting was "unnecessary."

Additional evidence showed that, after the police arrived on the scene, they did not find a gun on Allen. An autopsy revealed that Allen suffered four gunshot wounds, one of which was a fatal wound to the chest.

Harper testified in his own defense. He admitted shooting Allen, but asserted that he did so only to protect himself and Jamal.

4

Specifically, according to Harper, when Allen got out of the car to go fight Jamal, Allen took a gun and "put it in his waistband pocket area." After Jamal and Allen finished "dancing" around without throwing any punches, Harper and Jamal began to walk away, but Allen began taunting Jamal, cursing and saying that if Jamal did not fight, "[w]e're going to start shooting." Harper testified that he and Jamal continued walking away when Allen caught up to them and hit Jamal, causing him to fall into a ditch. When Jamal got up and stepped out of the ditch, Harper saw Allen reach "on his left side, the same place he put the gun at," and because Harper "knew [Allen] had this gun on him," Harper shot Allen in the forearm. After this first shot, Harper said, Allen reached for the gun again, so Harper "blanked out" and "shot him three more times." Harper testified, "I shot [Allen] out of fear because I was scared that he was going to kill me, murder me and my brother when [nobody] — wouldn't have been nobody here to tell the story."

2. Harper first contends that the trial court abused its discretion and committed plain error when it failed to require the

5

court reporter to transcribe the voir dire portion of the jury selection process — in other words, the questioning of jurors by the parties' counsel.[2] He argues that the transcription of the entire jury selection process, including voir dire, is mandated by OCGA § 17-8-5 (a), which provides, in relevant part:

> On the trial of all felonies the presiding judge shall have the testimony taken down and, when directed by the judge, the court reporter shall exactly and truly record or take stenographic notes of the testimony and proceedings in the case, except the argument of counsel.

Harper acknowledges that, in *State v. Graham*, 246 Ga. 341 (271 SE2d 627) (1980), this Court held that the former version of OCGA § 17-8-5 (a) does not cover jury selection. See *Graham*, 246 Ga. at 343 (holding that the term "proceedings" in former OCGA § 17-8-5 (a) refers to "objections, rulings and other matters which occur during the course of the evidence as well as any post-trial

---

[2] Notably, except for voir dire, the entire jury selection process *was* transcribed in this case, including the questioning of jurors by the trial judge. And Harper does not allege that anything objectionable occurred during any part of jury selection.

procedures").[3]  Nevertheless, Harper argues that *Graham* was wrongly decided, and he cites several decisions of the United States Supreme Court and the Georgia Court of Appeals that — while not referring to OCGA § 17-8-5 (a) — generally characterize voir dire or jury selection as "proceedings."  See, e.g., *Presley v. Georgia*, 558 U.S. 209, 213 (130 SCt 721, 175 LE2d 675) (2010); *Press-Enterprise Co. v. Superior Court of California*, 464 U.S. 501, 503 (104 SCt 819, 78 LE2d 629) (1984); *Presley v. State*, 290 Ga. App. 99, 100-101 (658 SE2d 773) (2008) (subsequent case history omitted).  Harper also points to OCGA § 5-6-41 (d), which he says supports his reading of OCGA § 17-8-5 (a).[4]  We are not persuaded.

---

[3] When *Graham* was decided, OCGA § 17-8-5 was codified as Code Ann. § 27-2401, but the pertinent statutory language has not been materially amended since then.  See *Allen v. State*, 310 Ga. 411, 420 n.8 (851 SE2d 541) (2020) ("The General Assembly made a few purely stylistic changes, removing several commas, in enacting OCGA § 17-8-5 (a), but otherwise the text remained the same.").

[4] OCGA § 5-6-41 (d) provides, in relevant part:
Where a trial in any civil or criminal case is reported by a court reporter, all motions, colloquies, objections, rulings, evidence, whether admitted or stricken on objection or otherwise, copies or summaries of all documentary evidence, the charge of the court, and all other proceedings which may be called in question

7

Indeed, in *Allen v. State*, 310 Ga. 411, 420 (851 SE2d 541) (2020), we upheld *Graham* and rejected essentially the same arguments that Harper now makes. As we explained in *Allen*, none of the decisions the appellant relied on in that case — which are largely the same as the ones Harper relies on here — "actually held anything about when voir dire must be recorded," and we see "no compelling reason to reconsider *Graham*'s statutory construction." *Allen*, 310 Ga. at 420.[5] Moreover, nothing in OCGA § 5-6-41 (d) — which has remained unchanged since *Allen* was decided — contradicts *Graham*'s construction of former OCGA § 17-8-5 (a) or compels us to revisit our precedent on this issue. Because *Graham*

on appeal or other posttrial procedure shall be reported[.]

[5] In *Allen*, we explained the basis for our statutory analysis in *Graham*: The language [of OCGA § 17-8-5 (a)] at issue in *Graham* and here has been part of Georgia law since 1876. . . . In determining the meaning of "proceedings," the *Graham* Court considered the historical context that revealed that voir dire had never been made part of the record until this Court's decision in *Owens v. State*, 233 Ga. 869 (214 SE2d 173) (1975), where this Court held that it was required for death penalty cases under United States Supreme Court precedent.

*Allen*, 310 Ga. at 421 n.9.

8

remains valid precedent, the trial court did not commit any error, plain or otherwise, when it did not on its own order the transcription of voir dire proceedings under OCGA § 17-8-5 (a), so this enumeration of error fails.

3. Harper further contends that the State failed to present sufficient evidence to disprove his justification defense beyond a reasonable doubt.[6] To support this claim, Harper relies on his own testimony that Allen had a gun during the fight and that Allen appeared to be reaching for that gun when Harper shot him.

Notwithstanding Harper's testimony, however, multiple witnesses — including his brother Jamal — testified that Allen did not have a gun during the fight. And the testimony of those witnesses — one of whom described the fight as "just a scuffle" — further indicated that Allen did not present such a threat to Harper or to Jamal as to justify the shooting. We conclude that the evidence presented at trial was sufficient to disprove Harper's justification

---

[6] The trial court instructed the jury on the justification defense as part of its final jury charge.

9

defense beyond a reasonable doubt and to authorize a rational jury to find him guilty beyond a reasonable doubt of the crimes for which he was convicted.  See *Jackson v. Virginia*, 443 U.S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979); *Morris v. State*, 301 Ga. 702, 705 (804 SE2d 42) (2017) ("The jury is free to reject any evidence in support of a justification defense and to accept the evidence that the shooting was not done in self-defense.") (citation and punctuation omitted). See also *Clark v. State*, 309 Ga. 473, 477 (847 SE2d 364) (2020) ("We leave to the jury the resolution of conflicts or inconsistencies in the evidence, credibility of witnesses, and reasonable inferences to be derived from the facts . . . and we do not reweigh the evidence.") (citations and punctuation omitted).

*Judgment affirmed. All the Justices concur.*

Decided October 19, 2021.

Murder. Floyd Superior Court. Before Judge Wetherington.

*Karen H. Brouse*, for appellant.

*Leigh E. Patterson, District Attorney, Morgan B. Bottger, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Kathleen L. McCanless, Assistant Attorney General*, for appellee.