303 Ga. 188
FINAL COPY

S17A1370. PEREZ v. THE STATE.

BOGGS, Justice.

Appellant Emmanuel Perez was tried before a jury and found guilty of malice murder and other crimes in the death of Armando Montez.[1] He now appeals, asserting that the trial court erred in admitting a hearsay statement from the deceased victim. We affirm.

Construed in the light most favorable to the verdict, the evidence showed that Perez suspected that his wife was having a sexual relationship with the victim, who was also married. Perez's wife met the victim while working at a club as a dancer, and she and the victim discussed opening their own club. The

---

[1] The crimes occurred on April 23, 2013. On June 5, 2013, a Chatham County grand jury indicted Perez on charges of murder, felony murder, aggravated assault, and possession of a firearm during the commission of a felony (three counts). Following a May 27-29, 2014 trial, the jury found him guilty on all counts, and he was sentenced to life plus five years in prison. The trial court merged the aggravated assault count and one count of possession of a firearm. The felony murder count and a possession of a firearm count predicated on felony murder were vacated by operation of law. Perez's motion for new trial was filed on May 30, 2014, amended by new counsel on May 18, 2015, and denied on March 10, 2016. His notice of appeal was filed on April 6, 2016. This case was docketed in this Court for the August 2017 term and submitted for a decision on the briefs.

victim worked at a tire shop, and Perez's wife would frequently visit the shop. Perez was aware that the victim sent flowers and text messages to his wife.

About a month before the shooting, Perez had in his cell phone the Spanish phrase for "the nightmare" as the name stored for his wife's phone number, and the Spanish phrase for "the dead man" as the name stored for the victim's phone number. A week or two prior to the shooting, Perez called the victim and confronted him with his suspicions. The day before the shooting, after Perez discovered that the victim had given Perez's wife a picture of himself, he went to the tire shop to confront the victim. When he arrived, the victim's brother told Perez that the victim was not there. Perez then told the brother to tell the victim that he was looking for him and that "he wasn't going to be f***ing with [the victim]," and handed the brother the picture that the victim had given his wife. Another employee of the tire shop testified that the victim's brother told him that when Perez came looking for the victim the day before the murder, Perez stated that he was looking for the victim "to kill him."

The next day, Perez came home to find his wife on the phone with the victim. Perez and his wife argued, and she told him that she was seeing the victim and that she wanted a divorce and showed him a ring on her finger that

2

the victim had given to her. Perez crushed the ring and went to the tire shop. When he was again told that the victim was not there, Perez drove around for about an hour and then returned. When he arrived, he got out of his car and approached the victim with a gun in his hand. Perez told the victim, "You just f***ed with the wrong person." The two began talking, but the conversation escalated with them yelling at one another. The victim then asked one of his employees to bring him his cell phone. When the employee approached and gave the victim his phone, Perez told the employee to say good-bye to the victim and to give the victim a kiss. Perez called his wife, but she was on the phone with the victim who put her on speaker phone. Perez told his wife "you know why I'm here and what I'm going to do." Perez and the victim then argued for several more minutes before Perez shot the victim in the side of his head. After the victim fell to the ground, Perez continued to shoot the victim until his gun jammed. He then cleared the jam and fired the entire magazine into the victim's body. In addition to the gunshot to the head, the victim suffered nine gunshot wounds to his neck and back, and died from his injuries.

Perez, who was a mortuary affairs specialist with the army, then went to a military police station to turn himself in. When the detectives arrived at the

3

police station 10 to 15 minutes after receiving the call that reported the shooting, Perez handed them the insignia from his Army uniform, telling them, "I don't need these anymore. You can throw them away." Perez was calm, and during his ride to the local police station engaged in casual conversation with the detectives. Once they arrived, Perez was given Miranda warnings. He testified that after he shot and killed the victim, he felt relief, and when asked why he shot the victim, he responded, "Well, it had been jealousy because of a lot of things I have seen and [his wife] has done."

1. Although Perez does not challenge the sufficiency of the evidence, it is our practice in murder cases to review the record to determine whether the evidence was legally sufficient. Having done so, we conclude that the evidence was sufficient for a rational trier of fact to find Perez guilty of the crimes for which he was convicted under the standard of Jackson v. Virginia, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979).

2. Perez argues that the trial court erred in admitting a statement, pursuant to OCGA § 24-8-807, that the victim had made to his wife before the shooting. The State sought to admit, and the trial court allowed over Perez's objection, testimony by the victim's wife that the victim told her, about one or two months

4

before his murder, that Perez threatened to kill the victim "if he got with [Perez's] wife."[2] However, pretermitting whether the trial court erred, any error was harmless.

> The new Evidence Code continues Georgia's existing harmless error doctrine for erroneous evidentiary rulings. See OCGA § 24-1-103 (a) ("Error shall not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected . . . .")[.] In determining whether the error was harmless, we review the record de novo and weigh the evidence as we would expect reasonable jurors to have done so. The test for determining nonconstitutional harmless error is whether it is highly probable that the error did not contribute to the verdict.

(Citation and punctuation omitted.) Williams v. State, 302 Ga. 147, 153-154 (3) (805 SE2d 873) (2017). Although Perez argues that he was harmed by the improper admission of evidence that "spoke directly and improperly toward intent" and favored the State's theory of the case, the evidence of his guilt was overwhelming, including other evidence of his threats against the victim. Prior to the shooting, Perez had the victim's name stored as "the dead man" in his cell phone, and he told an employee at the tire shop to tell the victim that he was going to kill him. On the day of the shooting while arguing with the victim,

---

[2] The victim's wife also suspected her husband was having an affair with Perez's wife. The victim eventually told his wife that "he was in love with [Perez's wife], and that he wanted to start a life with her."

5

Perez told his wife, who was on speaker phone, "you know why I'm here and what I'm going to do." And, after the shooting, Perez told officers that he shot the victim. Because the evidence that Perez committed malice murder, as found by the jury, was overwhelming, it is highly probable that the admission of the victim's hearsay statement did not contribute to the verdict. See id. (admission of prior bad acts not reversible error where evidence against defendant was overwhelming); Lance v. State, 275 Ga. 11, 24-25 (31) (560 SE2d 663) (2002) (error in admitting hearsay testimony harmless in light of properly admitted evidence on same issue).

Judgment affirmed. All the Justices concur.

Decided March 5, 2018.

Murder. Chatham Superior Court. Before Judge Walmsley.

Amy L. Ihrig, for appellant.

Meg E. Heap, District Attorney, Matthew Breedon, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Ashleigh D. Headrick, Assistant Attorney General, for appellee.