305 Ga. 326
FINAL COPY

S18A1071. TYNER v. THE STATE.

BETHEL, Justice.

This case marks Appellant Curtis Tyner's second appearance before this Court. In 2011, we reversed Tyner's 1984 conviction pursuant to a guilty plea for malice murder in connection with the death of Martha Mickel. See Tyner v. State, 289 Ga. 592 (714 SE2d 577) (2011) (overruled on other grounds by Lejeune v. McLaughlin, 296 Ga. 291 (766 SE2d 803) (2014)). Following a trial, Tyner was again convicted of malice murder and sentenced to life in prison.[1] On appeal, Tyner contends that the trial court erred in allowing certain

---

[1] Mickel was killed during the early morning hours of April 15, 1984. On September 20, 2011, following this Court's reversal of Tyner's 1984 guilty plea conviction, a Fulton County grand jury re-indicted Tyner, charging him with malice murder (Count 1), felony murder (Counts 2-4), kidnapping with bodily injury (Count 5), aggravated assault with intent to rape (Count 6), aggravated assault (Count 7), and robbery by force (Count 8). Tyner thereafter filed a plea in bar to quash Counts 5-8 of the indictment; the trial court denied the plea. After a February 2013 trial, a jury found Tyner guilty on all charges. Tyner was sentenced to life imprisonment for murder and 20 years consecutive for robbery by force. All other counts were merged with the malice murder count for sentencing, resulting in, as discussed below, merger issues.

statements made by Mickel to be admitted at trial under the residual hearsay exception contained in OCGA § 24-8-807; that the trial court erred in allowing certain out-of-court statements of investigating officers to be admitted at trial; that the trial court erred in admitting evidence related to the robbery by force charge; and that the trial court erred in merging the felony murder count with the malice murder count rather than vacating the felony murder count. We note that the felony murder counts were vacated as a matter of law. Finding the remaining challenges to be without merit, we affirm.

Viewed in the light most favorable to the verdict, the trial evidence showed the following. On April 15, 1984, the body of Martha Mickel was found in Bear Creek in southwest Fulton County; Mickel was reported missing the day prior. The buttons on Mickel's blouse were either missing or

Tyner filed a motion for new trial on February 12, 2013; he amended that motion on June 8, 2016. In his motion, Tyner argued, in relevant part, that the trial court erred in denying his plea in bar as to Counts 5-8 because the statute of limitation is not tolled while a defendant stands convicted for one count of an indictment, even if his plea is later withdrawn as involuntary; the State did not contest Tyner's motion as to Count 8. The trial court did not hold a hearing on Tyner's motion until December 6, 2016, and the State did not file a response to Tyner's motion until December 16, 2016. Nearly 11 months elapsed between the hearing on Tyner's motion and the trial court's rendering a decision on same, in which it purportedly granted Tyner's motion as to Count 8 (which was, in fact, vacated) but denied the remainder of his claims. Tyner filed a timely notice of appeal, and the case was docketed to this Court's August 2018 term and submitted for a decision on the briefs.

unfastened, and her bra was torn open with the fastener broken. Her pants were unbuttoned and unzipped, and her belt was unbuckled. The investigation of Mickel's Smyrna home uncovered no signs of forced entry: no broken glass was observed, and the front door was closed and locked. Police recovered five Belair-brand cigarette butts[2] and a length of rope from Mickel's front porch. While searching the interior of Mickel's home, police found Tyner's business card, as well as a contract signed by both Mickel and Tyner concerning painting work Mickel hired Tyner to perform. During a police canvas of Mickel's condominium complex, Mickel's neighbor Charlene Capilouto told police that she saw Tyner's truck parked outside Mickel's home around 11:00 p.m. on April 12 and saw a person standing next to the truck smoking cigarettes, although she could not clearly see the person.

Thereafter, police attempted to make contact with Tyner, visiting his home several times; when no one answered the door, police set up surveillance of his home. During the surveillance period, police knocked on the door on multiple occasions, and, while they observed movement within the home, no one answered the door. On the morning of April 18, one of Tyner's roommates

---

[2] Trial testimony from a friend of Tyner confirmed that Tyner smoked Belair-brand cigarettes around the time of the murder. Mickel did not smoke.

answered the door and permitted police to glance around the home to ensure Tyner was not there. Later that day, police obtained a search warrant for the residence and an arrest warrant for Tyner; Tyner was arrested the same day.

On April 18, 1984, police conducted an approximately three-hour interview with Tyner, following which Tyner signed a typed statement. Tyner stated that, sometime after midnight on April 15, 1984, he drove from his home in south Fulton County to Smyrna. There, he went to a gas station down the street from Mickel's home for a cup of coffee and then returned to his car to smoke cigarettes.[3] He next recalled driving south on Interstate 285 and looking over to see Mickel sitting in the passenger seat, her hands bound and a rope around her neck securing her to the passenger-seat headrest. Tyner then exited the interstate and made several turns, at which point he came to a bridge from which he threw Mickel's purse. A couple of miles later, he came to another bridge from which he threw Mickel. During a subsequent interview, Tyner again stated that he did not recall how Mickel got in his car. He recalled only that he "came to or became aware of her presence in his car." Tyner also told

---

[3] This recollection was corroborated by trial testimony from the gas station clerk.

police that, somewhere along Interstate 285, he threw out the pieces of rope with which Mickel had been bound.

At trial, the trial court allowed Mickel's close friend Crystal Haberkorn to testify about statements Mickel made to her in the weeks before her death. Haberkorn and Mickel attended the same church, saw each other every week, spoke during the week, and confided their personal feelings to one another. Haberkorn testified that, while Tyner was in the process of painting Mickel's home, Mickel expressed concern that Tyner had taken a spare key from a desk drawer in her home. Some time later, Mickel told Haberkorn that the key had been replaced or returned.

The jury also heard the testimony of retired Fulton County Police Detective John Lines. Lines testified that, on April 16, 1984, he and Sergeant Edwin Clack traveled together to Mickel's residence where Lines went inside while Clack searched the residence's curtilage. After their search, Clack presented Lines with items "found on the front porch," including a piece of rope and five Belair-brand cigarettes. Lines also testified that he and Sergeant W. R. Killian, who is now deceased, were dispatched to the bridge from which Tyner threw Mickel's purse. There, Killian recovered the purse several hundred yards downstream from the bridge where the current had taken it.

Retired Fulton County Police Detective J. D. Shirley testified that he was assigned to canvas several miles of Interstate 285 Southbound, where he recovered a piece of rope, similar in composition to that which Tyner described Mickel as being bound with.

The medical examiner testified that burst capillaries on Mickel's face found during her autopsy indicated she was strangled by a ligature. His autopsy also showed that Mickel was alive and breathing when she was thrown into the water and that her cause of death was drowning in combination with ligature strangulation.

1. Tyner does not challenge the sufficiency of the evidence recounted above to support his convictions. Nevertheless, as is our practice in murder cases, we have independently reviewed the record and conclude that the evidence adduced at trial was legally sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Tyner committed the crimes of which he was found guilty. Jackson v. Virginia, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979).

2. Tyner contends that the trial court erred by admitting into evidence the statements Mickel made to Haberkorn regarding the missing key. We disagree.

The trial court admitted Haberkorn's statements, over Tyner's objection, pursuant to Georgia's residual hearsay exception set forth in OCGA § 24-8-807 ("Rule 807"), which states in relevant part:

A statement not specifically covered by any law but having equivalent circumstantial guarantees of trustworthiness shall not be excluded by the hearsay rule, if the court determines that: (1) The statement is offered as evidence of a material fact; (2) The statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (3) The general purposes of the rules of evidence and the interests of justice will best be served by admission of the statement into evidence. . . .

The State offered the statements at issue as an explanation for the lack of evidence of forced entry to Mickel's home. Tyner does not argue that the statements were not offered as evidence of a material fact or that the State, through reasonable efforts, could have procured more probative evidence on this point. Instead, Tyner limits his argument to attacking the statements' factual value and their "guarantees of trustworthiness." Specifically, Tyner cites this Court's recent decision in Jacobs v. State, 303 Ga. 245 (2) (811 SE2d 372) (2018), and argues that the trial court erroneously relied on Haberkorn and Mickel's "close relationship" as evidence of Haberkorn's credibility.

We review the trial court's admission of this evidence for abuse of discretion. Jacobs, 303 Ga. at 250. In Jacobs, we explained that statements

admitted pursuant to the residual hearsay exception are "considered sufficiently trustworthy not because of the credibility of the witness reporting them in court, but *because of the circumstances under which they were originally made.*" (citation and punctuation; emphasis supplied.) Id. at 249 (2) (citing Smart v. State, 299 Ga. 414, 421-422 (3) (788 SE2d 442) (2016)). In that case, we considered statements made by the victim concerning acts of domestic violence committed against the victim by her husband. The record established that the victim shared a relationship of trust and confidence with each of the persons to whom she relayed the statements at issue. We agreed with the trial court that such statements were admissible pursuant to Rule 807 given the close relationship between the victim and her confidantes.

Contrary to Tyner's assertion, the trial court did not predicate admission of Haberkorn's testimony on her credibility as a witness. Instead, as in Jacobs, the trial court considered the circumstances under which Mickel's statements to Haberkorn were made: within the confines of their close friendship. We find the trial court's reasoning persuasive: "[Mickel and Haberkorn] knew each other for some time. . . . [T]hey had a trusting relationship. . . . There would be no reason — and the defense had proffered no alternate reason — why Mickel would have [told Haberkorn about the missing key] except that she was

concerned about [it]."  In short, Mickel had no reason to concoct and relate to Haberkorn, her close friend, a story about a missing key and implicate Tyner in the key's disappearance.  We find no abuse of discretion on the part of the trial court in permitting Haberkorn to testify to Mickel's statements regarding the missing key.

3.  Tyner next argues that the trial court violated the rule against hearsay by admitting, over Tyner's objection, Detective Lines' testimony concerning the evidence recovered by Sergeant Clack at Mickel's residence.  Specifically, Tyner takes issue with Lines' testimony that Sergeant Clack turned over a piece of rope and five Belair-brand cigarette butts "found on the front porch."

However, it is not necessary to consider whether the admission of this evidence was error because, pretermitting whether the statement was hearsay, any error in admitting it was harmless.  See Perez v. State, 303 Ga. 188, 190-191 (2) (811 SE2d 331) (2018).  Indeed, overwhelming evidence supported Tyner's conviction, not least of which was Tyner's statement to police in which he confessed to throwing the unconscious Mickel from a bridge into the creek in which she ultimately drowned.  As such, "it is highly probable that the admission of [Lines' testimony] did not contribute to the verdict."  Id. at 191 (2).

4. Tyner similarly argues that the trial court erred by allowing Detective Lines to give hearsay testimony, without objection, regarding the specific location at which Mickel's purse was found. Because Tyner did not object to this statement at trial, we review only for plain error. OCGA § 24-1-103 (d).

> To show plain error, [Tyner] must point to an error that was not affirmatively waived, the error must have been clear and not open to reasonable dispute, the error must have affected his substantial rights, and the error must have seriously affected the fairness, integrity or public reputation of judicial proceedings.

(Citation and punctuation omitted.) Lupoe v. State, 300 Ga. 233, 243 (4) (794 SE2d 67) (2016).

Assuming that this is a cognizable hearsay argument and that the trial court's permitting the admission of this testimony was erroneous,[4] Tyner must also demonstrate that the error affected his substantial rights or, in other words,

---

[4] Federal courts have suggested that, in performing plain error review, appellate courts should consider "whether the party seeking relief under the plain error rule may have originally made a strategic decision not to object to the conduct now challenged on appeal." United States v. Bayless, 201 F3d 116, 128 (2d Cir. 2000). Here, the record raises a question as to whether, in failing to object to Lines' testimony on direct examination, Tyner's trial counsel made such a strategic decision. Indeed, on cross-examination, Tyner's trial counsel emphasized Lines' lack of personal knowledge concerning the specific location at which Mickel's purse was found. On appeal, however, Tyner argues that the trial court should have intervened sua sponte to exclude the portion of Lines' testimony at issue. But "[t]rial counsel's sound strategy does not become plain error at appellate counsel's urging." United States v. Smith, 459 F3d 1276, 1300 (11th Cir. 2006) (Tjoflat, J., concurring specially).

that it likely affected the outcome of the trial court proceedings. <u>Slaton v. State</u>, 303 Ga. 651, 655 (4) (c) (814 SE2d 344) (2018). This Tyner cannot do given the overwhelming evidence of his guilt, including, as mentioned above, his statement to police that he threw the still-living Mickel from a bridge into the creek in which she drowned. Accordingly, this argument is also without merit.

5. Next, Tyner argues that the trial court erred in admitting unspecified evidence regarding the charge of robbery by force, which stemmed from the taking of Mickel's purse and which the trial court later found to be time barred. Tyner did not object at trial to the introduction of this evidence. On appeal, Tyner makes no challenge as to the evidence's relevancy. Rather, he characterizes the evidence regarding the taking of Mickel's purse as "extrinsic acts" evidence and contends that, because it was offered only to demonstrate his propensity for criminal activity, it was thus prohibited by OCGA § 24-4-404 (b). This argument is unavailing.

Essentially, and without pointing to any specific evidence that he claims should have been excluded, Tyner contends that evidence related to the robbery by force charge should not have been heard by the jury because the trial court later found that this count was time-barred. But, in any event, Tyner has not

pointed to any evidence that was not admissible as to the counts properly considered by the jury.

> Evidence pertaining to the chain of events explaining the context, motive, and set-up of the crime, is properly admitted if it is linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury. Evidence of other acts is "inextricably intertwined" with the evidence regarding the charged offense if it forms an integral and natural part of the witness's accounts of the circumstances surrounding the offenses for which the defendant was indicted. And this sort of intrinsic evidence remains admissible even if it incidentally places the defendant's character at issue.

(Citation and punctuation omitted.) Smith v. State, 302 Ga. 717, 725 (4) (808 SE2d 661) (2017). As discussed above, Tyner admitted to police that, in quick succession, he threw Mickel's purse, the ropes with which Mickel was bound, and Mickel herself from his car. Any evidence regarding the taking of Mickel's purse was thus "linked in time and circumstances with the charged crime" and was properly admitted with respect to the non-time-barred charges.

6. Having found the evidence sufficient to sustain Tyner's convictions and concluded that his other enumerations of error are without merit, we now turn to his contention that the trial court erroneously merged his felony murder counts with the malice murder count. Instead, as Tyner correctly asserts, any felony murder conviction here would be vacated by operation of law. See

Malcolm v. State, 263 Ga. 369, 375 (6) (434 SE2d 479) (1993).  But that error was harmless because, either way, Tyner was not convicted of, or sentenced for, felony murder.  See Worthen v. State, 304 Ga. 862 (823 SE2d 291) (2019).

Finally, it appears that the trial court should have separately sentenced Tyner for kidnapping with bodily injury and aggravated assault with intent to rape.  However, "when a merger error benefits a defendant and the State fails to raise it by cross-appeal," we generally do not correct the error.  Dixon v. State, 302 Ga. 691, 698 (808 SE2d 696) (2017).  Accordingly, we decline to do so here.

Judgment affirmed.  All the Justices concur.

Decided March 4, 2019.

Murder. Fulton Superior Court. Before Judge Brasher.

Clifford L. Kurlander, for appellant.

Paul L. Howard, Jr., District Attorney, Lyndsey H. Rudder, Kevin C. Armstrong, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Meghan H. Hill, Assistant Attorney General, for appellee.