312 Ga. 860
FINAL COPY

S21A0989. TROY v. THE STATE.

PETERSON, Justice.

Tevision Troy appeals his convictions for the 2016 murder of Tony Saffo and a firearm offense.[1] Troy's sole claim of error challenges the trial court's admission of evidence that he committed an aggravated assault in 1998 with the same gun that was used to

---

[1] The crimes took place on March 11, 2016. On June 10, 2016, a Fulton County grand jury indicted Troy for malice murder (Count 1), felony murder (Counts 2, 3, and 4), aggravated assault with a deadly weapon (Count 5), possession of a firearm during the commission of a felony (Count 6), and two counts of possession of a firearm by a convicted felon (Counts 7 and 8). Troy was tried by a jury from March 6 to 13, 2017. It found him guilty of all counts. The trial court sentenced Troy as a recidivist under OCGA § 17-10-7 (a) and (c) to serve life in prison without parole for malice murder, five years each to run consecutively for Counts 6 and 7, and 15 years to run consecutively for Count 8. Counts 2, 3, and 4 were vacated by operation of law. Count 5 was merged into Count 1. Troy timely moved for a new trial on March 23, 2017, and amended the motion on September 24, 2019. Following a hearing, the trial court amended the sentence to merge Counts 6 and 7 into Count 8. The State has not challenged this purported merger, and we decline to address it sua sponte. See *Dixon v. State*, 302 Ga. 691, 697-698 (4) (808 SE2d 696) (2017) (explaining why this Court ordinarily declines to exercise its discretion to correct merger errors favoring defendants). The trial court otherwise denied the motion for new trial in an order entered on July 23, 2020. Appellant timely filed a notice of appeal. The appeal was docketed to this Court's August 2021 term and submitted for consideration on the briefs.

kill Saffo. He argues that admitting this evidence violated OCGA §§ 24-4-404 (b) ("Rule 404 (b)") and 24-4-403 ("Rule 403"). But we need not reach the merits of Troy's contentions, as the evidence's admission was harmless even if erroneous. We affirm.

A few weeks before Saffo's death, he and Troy went to a strip club. Some money went missing, and the two argued. Then, on March 11, 2016, Troy ran into Saffo at an auto repair shop they both frequented. The two argued again. According to witnesses, Troy left, then came back with a gun. Witnesses testified that Troy then fatally shot Saffo.

Questioned by police following his arrest, Troy denied having been in the area of the shop on the day of the shooting. This was contradicted by cell phone tower data and eyewitnesses. One eyewitness testified that Troy continued to shoot Saffo after Saffo was lying on the ground, calling for the witness to get a gun.[2] Another witness heard six shots. Others who were at the shop

---

[2] The witness believed Saffo to be referring to a gun at Saffo's house, 20 to 30 minutes away.

testified that they saw Troy with a gun before the shooting. Another witness testified that as the witness approached the scene, Troy was leaving with something in his hand. Troy only told the witness he was "sorry this happened." The witness then came upon Saffo's body. Several witnesses said that Troy indicated before the shooting that he was going to shoot someone. Witnesses also testified that they did not see Saffo with a gun that day. Troy's gun was not recovered.

At trial, the State sought to introduce evidence about a 1998 shooting by Troy. Before this presentation began, Troy asked the trial court to revisit a pre-trial ruling apparently allowing it.[3] He claimed that the evidence was not admissible to prove identity under Rule 404 (b) because witness cross-examination and his requested jury charge on self-defense had removed that issue from contention.[4]

---

[3] Troy's counsel referred to a "full blown hearing" on the motion, but the record contains no hearing transcript or written order. The trial court did indicate that it had previously found the evidence admissible, but had left open the possibility of changing its ruling.

[4] Troy's cross-examination of the eyewitness who saw him shoot Saffo while Saffo was on the ground did not, in fact, support a claim of self-defense. The exchange was: "Q. . . . [Troy] shot back in self defense? Is that not true? A. That's not true. Q. And isn't it true that you actually took Mr. Saffo's gun and hid it so that when the police got there they wouldn't see a weapon and they

He also argued that, because he was raising self-defense, the evidence's probative value was substantially outweighed by its unfairly prejudicial impact and so it was barred by Rule 403. The trial court overruled the Rule 404 (b) objection, ruling that the evidence was intrinsic. As for the Rule 403 objection, the court said that it had already "conducted that analysis" and still found the evidence admissible.

The State presented testimony from the victim of the 1998 shooting, whom Troy had shot in the chest, and from detectives who had investigated that incident. The victim's description of Troy's gun was similar to that given by witnesses to the Saffo shooting. Ballistic evidence from the two events matched as well. The State also introduced court records showing that Troy pleaded guilty to charges stemming from the 1998 shooting.

The only testimony Troy presented was his own. He claimed that he shot Saffo after seeing him reach for a gun. Troy claimed

---

would think that this was not self defense? Is that not correct? A. That's not true."

that earlier that day, another man at the shop had called Troy a "duck," which he interpreted as "lame duck" or "sitting duck." He claimed that he brought his gun back with him for protection. Troy admitted that this was the same gun he had used in the 1998 shooting, which he also characterized as undertaken in self-defense.

On appeal, Troy argues that the trial court erred in admitting evidence of the 1998 shooting as intrinsic and not subject to Rule 404 (b), as it was a separate and distinct incident with no relation to the shooting of Saffo. He also contends that the evidence was inadmissible under Rule 404 (b) and that its prejudicial effect substantially outweighed its probative value, meaning it should have been excluded under Rule 403.

Regardless of whether Troy properly preserved these issues, and regardless of any error under either Rule 403 or Rule 404 (b), there was no harm in admitting the evidence. Evidentiary errors require reversal only if they harm a defendant's substantial rights. See OCGA § 24-1-103 (a). We deem a non-constitutional error harmless if it is highly probable that it did not contribute to the

jury's verdict. See *Boothe v. State*, 293 Ga. 285, 289-290 (2) (b) (745 SE2d 594) (2013). This requires us to review the evidence de novo, after setting aside any evidence that was admitted as a result of the error. See *Perez v. State*, 303 Ga. 188, 191 (2) (811 SE2d 331) (2018). We then "weigh the [remaining] evidence as we would expect reasonable jurors to have done so as opposed to viewing it all in the light most favorable to the jury's verdict." *Peoples v. State*, 295 Ga. 44, 55 (4) (c) (757 SE2d 646) (2014) (citation and punctuation omitted).

Without the evidence relating to the 1998 shooting, the remaining evidence of guilt included:

- details of a dispute between Troy and Saffo a few weeks before the shooting;

- details of an argument between them on the day of the shooting;

- witnesses testifying that Troy left and came back with a gun;

- witnesses relating that Troy indicated that he was going to shoot someone;

- witnesses testifying that Saffo did not have a gun that

day;

- one eyewitness testifying that he saw Troy keep shooting Saffo even as Saffo lay on the ground;

- another witness hearing six shots;

- another witness testifying that Troy left the scene with something in his hand, apologizing for what had just happened; and

- cell phone tower data contradicting Troy's initial claim not to have been in the area that day.

This was overwhelming evidence that Troy shot Saffo and did not act in self-defense. And while the 1998 shooting evidence "undoubtedly was somewhat damaging to [Troy], since it implicated him in another [incident] in which a victim was shot with the same gun later used" to kill Saffo, *Peoples*, 295 Ga. at 57 (4) (c), "the other evidence was so powerful" that any error in its admission did not harm Troy and so does not justify reversal.[5] *Boothe*, 293 Ga. at 291

---

[5] Assuming the evidence of the 1998 shooting could have been and was introduced under Rule 404 (b) for identity purposes, the prejudice to Troy from connecting him to the murder weapon would not properly be understood as the kind of "unfair prejudice" that Rule 403 would weigh against the probative value, as that prejudice would not be "unfair." In that case, the unfair prejudice analysis would instead be more focused on whatever extent the evidence was likely to draw an improper propensity inference. But because we are reviewing

(2) (b).

*Judgment affirmed. All the Justices concur.*

Decided November 23, 2021.

Murder. Fulton Superior Court. Before Judge Russell.

*Robert J. Beckwith*, for appellant.

*Fani T. Willis, District Attorney, Lyndsey H. Rudder, Kevin C. Armstrong, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Alex M. Bernick, Assistant Attorney General*, for appellee.

---

the admission of the evidence as intrinsic for harmlessness, we consider all the prejudice to Troy flowing from that admission.