NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: October 21, 2025

S25A1131.  SMITH v. THE STATE.

WARREN, Presiding Justice.

Appellant Victor Allen Smith was convicted of felony murder, driving under the influence, and other crimes after he struck and killed Hugo Nathaniel Martinez during a high-speed attempt to evade a Georgia State Patrol trooper.[1]  In his only enumeration of

---

[1] The collision occurred on March 6, 2022.  On June 1, 2022, a Gwinnett County grand jury indicted Smith for felony murder predicated on fleeing or attempting to elude a police officer (Count 1), homicide by vehicle in the first degree (Count 2), aggravated assault (Count 3), fleeing or attempting to elude a police officer (Count 4), driving under the influence (less safe) (alcohol) (Count 5), driving while license suspended (Count 6), speeding (Count 7), failure to maintain lane (Count 8), and reckless driving (Count 9).  Counts 3, 6, and 7 were dismissed before trial.  Smith was tried by a jury from March 20 to 22, 2023.  The jury found Smith guilty on all counts.  Smith was sentenced to serve life in prison without the possibility of parole on Count 1, and 12 months in prison on Counts 5, 8, and 9, respectively, to run concurrently to Count 1.  The remaining counts were merged or vacated by operation of law. On April 18, 2023, Smith timely filed a motion for new trial, which he later amended on January 22, 2025.  On April 9, 2025, the trial court entered an order denying the motion.  Smith then filed a timely notice of appeal on May 6, 2025, and the case was docketed to the August 2025 term of this Court and submitted for a decision on the briefs.

error, Smith contends on appeal that the trial court abused its discretion by admitting evidence that his driver's license was suspended at the time of the crash. For the reasons explained below, we affirm.

1. The evidence presented at Smith's trial showed the following. At around 8:00 p.m. on March 6, 2022, Georgia State Patrol Trooper Demarcus Thomas was conducting traffic-enforcement operations on an interstate in Gwinnett County. Trooper Thomas observed Smith, who was driving a silver sports car, "making improper lane changes" and "traveling well over 80 miles per hour," despite the posted speed limit being 70 miles per hour. When Trooper Thomas attempted to initiate a traffic stop, Smith did not pull over and instead sped away. While pursuing Smith, Trooper Thomas "glance[d]" at his speedometer and noticed that it registered 117 miles per hour. He estimated that Smith was driving "over 120" miles per hour.[2] Eventually, Smith's car veered

_____

[2] The high-speed pursuit was captured on dashcam video, which was shown to the jury during Trooper Thomas's testimony.

2

toward the right-hand shoulder of the interstate, where a towing operation was in progress.

Martinez was standing on the right-hand shoulder of the interstate waiting to have his pickup truck towed. The tow-truck driver testified that he positioned the loading vehicle in front of Martinez's truck, lowered the flatbed, attached the hook, and started loading the truck onto the flatbed. The driver planned to "take [Martinez] to a gas station that was nearby," and told Martinez to get into the tow-truck. Then, the driver looked up and saw "headlights that were coming directly towards" him and Martinez. Smith's car struck Martinez and threw his body over the retaining wall onto a road that parallels the interstate. The medical examiner later testified that Martinez died from blunt-force injuries, including a fracture at the base of his skull that tore his brain stem. The tow-truck driver jumped over the retaining wall before the collision and was unharmed.

When Trooper Thomas arrived at the scene, he saw Martinez "laying down" "with a lot of blood" around him. Trooper Thomas

3

immediately called the Specialized Collision Reconstruction Team (SCRT), which was standard practice for fatal car crashes. Trooper Thomas then approached Smith's car, where he found Smith exhibiting signs of severe intoxication: "slow[ness] … to respond," "watery, bloodshot" eyes, and "the smell of alcohol emitting from his person." Trooper Thomas asked to see Smith's driver's license, which Smith initially said was in his wallet. Smith then accused Trooper Thomas of taking his wallet, which Trooper Thomas took as "a cue of impairment."[3] Smith was transported to the hospital for treatment before later being taken into custody.

Trooper Emily Beaulieu of the SCRT arrived at the scene and took photographs of the crash site — one depicting the final resting place of the vehicles, with Smith's car hanging partially off the flatbed and wedged under the crushed tailgate of Martinez's truck, and another showing Martinez's hat and cell phone resting on the end of the flatbed. Trooper Beaulieu testified that Martinez's body

---

[3] This exchange was also captured on dashcam video and played for the jury.

was found "a little over 54 feet" from the hat and cell phone. During Trooper Beaulieu's testimony, the State introduced a certified copy of Smith's driving record from the Virginia Department of Motor Vehicles and asked her to "read the driver's license status." Over Smith's objection, Trooper Beaulieu testified that Smith's driver's license had been suspended since March 2004.[4]

A search warrant was acquired to obtain blood samples that were drawn from Smith while he was treated at the hospital. A toxicology test revealed that, at the time of the blood draw, Smith had a blood alcohol concentration of 0.188, which a toxicologist testified was a concentration sufficient to impair an average person's vision, psychomotor functions, and reaction time.

2. Smith contends that the trial court abused its discretion by admitting evidence of his suspended driver's license. He claims this evidence was irrelevant, see OCGA § 24-4-402 (Rule 402), and that it was unfairly prejudicial and resulted in a needless presentation of

---

[4] Smith's wife testified that neither she nor Smith ever received notice that his license was suspended.

cumulative evidence against him, see OCGA § 24-4-403 (Rule 403).[5]

"We review a trial court's evidentiary rulings under an abuse of discretion standard of review." *Williams v. State*, 302 Ga. 474, 478 (2017) (citation omitted). "And even where an abuse of discretion is shown, there are no grounds for reversal if the error did not affect a 'substantial right,' and thus harm, the defendant." *Venturino v. State*, 306 Ga. 391, 393 (2019) (citing OCGA § 24-1-103(a)). Where, as here, the alleged error is non-constitutional, we examine "whether it is highly probable that the error did not contribute to the verdict by reviewing the record de novo and weighing the evidence as we would expect reasonable jurors to have done so." *Pounds v. State*, 320 Ga. 288, 294 (2024) (cleaned up). See also *Troy v. State*, 312 Ga. 860, 862 (2021) (applying the non-constitutional error standard in reviewing a Rule 403 challenge). As explained

---

[5] "All relevant evidence shall be admissible, except as limited by constitutional requirements or as otherwise provided by law or by other rules. … Evidence which is not relevant shall not be admissible." OCGA § 24-4-402.

"Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." OCGA § 24-4-403.

below, we conclude that any error in the admission of evidence of Smith's suspended driver's license was harmless.

(a) Before trial, Smith filed a general and special demurrer to Count 6 of the indictment (driving while license suspended), arguing that because the State failed to allege that Smith received notice that his license was suspended, this count should be dismissed. See *State v. Orr*, 246 Ga. 644, 644 (1980) ("[A]bsent proof by the State of actual or legal notice to the defendant a conviction for the offense of driving while one's license is suspended cannot be sustained."). He also filed a motion in limine, which sought to preclude the State "from discussing on cross examination or mentioning" that he "was driving with a suspended license." Although the State ultimately moved to dismiss Count 6, and the trial court did so, the State opposed Smith's motion to exclude evidence of Smith's suspended license, arguing that it was relevant to explain Smith's motive in fleeing from law enforcement; that it was intrinsic and necessary to

complete the story of the other charged crimes;[6] and that its probative value was not substantially outweighed by the risk of unfair prejudice. See Rule 403. The trial court agreed with the State and denied Smith's motion in limine. As discussed above, Trooper Beaulieu testified at trial that Smith's license had been suspended since 2004.

(b) Assuming without deciding that the trial court abused its discretion by admitting evidence of Smith's suspended license, we conclude that any error in admitting this evidence was harmless.

The State presented compelling evidence that Smith committed felony murder, see OCGA § 16-5-1(c), when he struck and killed Martinez while attempting to elude a Georgia State Patrol trooper in violation of OCGA § 40-6-395(b)(5)(A);[7] that he was under

---

[6] "Evidence is admissible as intrinsic evidence when it is (1) an uncharged offense arising from the same transaction or series of transactions as the charged offense; (2) necessary to complete the story of the crime; or (3) inextricably intertwined with the evidence regarding the charged offense." *Jenkins v. State*, 313 Ga. 81, 89 (2022) (citation omitted).

[7] At the time of the collision and Smith's indictment, OCGA § 40-6-395(b)(5)(A) made it a felony to flee or attempt to elude a pursuing police officer under certain conditions, including if the fleeing vehicle travelled over "20

8

the influence such that it was less safe for him to drive, see OCGA §
40-6-391(a)(1); that he improperly changed lanes, see OCGA § 40-6-
48; and that he was driving recklessly, see OCGA § 40-6-390.
Specifically, Trooper Thomas testified that, after he initiated a
traffic stop, Smith attempted to flee and accelerated his vehicle to
approximately 120 miles per hour, 50 miles per hour over the posted
speed limit. The jury also saw dashcam video of Trooper Thomas's
pursuit of Smith, which showed Smith driving erratically and at a
high speed. The State introduced post-crash photographs and a
scaled diagram, all of which showed that the force with which
Smith's vehicle collided with Martinez caused his body to land more
than 50 feet from the crash site. According to a medical examiner,
the collision caused severe blunt-force injuries that resulted in
Martinez's death. Additionally, the State's toxicology expert
testified that, around the time of the collision, Smith's blood alcohol
concentration was 0.188, which the toxicologist testified would

---

miles an hour above the posted speed limit," struck or collided "with another
vehicle or pedestrian," or fled in "traffic conditions which place[d] the general
public at risk of receiving serious injuries."

9

impair an average person's vision, psychomotor functions, and reaction time.

By contrast, the evidence of Smith's suspended license "played a minor role in … the State's case." *Morgan v. State*, 307 Ga. 889, 898 (2020). The only evidence of the suspension that the State introduced was a record from the Virginia Department of Motor Vehicles that showed Smith's driver's license was suspended in 2004, which Trooper Beaulieu read during her testimony. The State did not mention the suspension during its opening statement, closing argument, or at any point during trial other than during Trooper Beaulieu's testimony. Cf. *Baker v. State*, 318 Ga. 431, 448–49 (2024) (erroneous admission under Rule 403 of an excerpt of defendant's rap video was harmful where, among other reasons, the State "made it a focal point of the trial" and "emphasized" it "during [its] closing argument" with "a pointed argument"). And Smith's wife testified that Smith never received notice, and thus did not know at the time of the crash, that his license was suspended, which undermined the State's desired inference that Smith fled from

10

Trooper Thomas because of his suspended license. Given the strong evidence of Smith's guilt and the State's minimal use of the suspension record at trial, it is highly probable that any error in admitting this evidence did not contribute to the verdicts and therefore was harmless. See *Hood v. State*, 299 Ga. 95, 105–06 (2016) (concluding that it was highly probable that the trial court's admission of evidence in violation of Rule 403 did not contribute to the verdicts, and therefore was not reversible error, because the evidence that the appellant "committed the crimes for which he was convicted was strong").

Because any error in admitting evidence of Smith's suspended license was harmless, his sole enumeration fails. We therefore affirm.

*Judgment affirmed. All the Justices concur.*

11