NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the
# Supreme Court of Georgia

No. S26A0078
Bobby Crawford
v.
The State

On Appeal from the Superior Court of Fulton County
No. 22SC181246

Decided: April 21, 2026

BETHEL, Justice.

After a jury trial, Bobby Crawford was convicted of malice murder in connection with the beating death of his roommate Timothy Walker.[1] On appeal, Crawford argues that the evidence presented at his trial was not sufficient as a matter of constitutional due process to support his conviction, and he raises three claims of trial court error. For the reasons that follow, we affirm.

1. In his first claim of error, Crawford asserts that the evi-

---

[1] The crimes occurred on November 30, 2021. In March 2022, a Fulton County grand jury indicted Crawford for malice murder, felony murder predicated on aggravated assault, and aggravated assault. At a December 2023 trial, a jury found Crawford guilty of all counts. The trial court sentenced Crawford to serve life in prison without the possibility of parole for malice murder. The remaining counts merged or were vacated by operation of law. Crawford filed a timely motion for new trial, which he amended through new counsel. On June 9, 2025, the trial court entered an order denying Crawford's motion for new trial, as amended. Crawford thereafter filed a timely notice of appeal, and his appeal was docketed to this Court's term beginning in December 2025 and submitted for a decision on the briefs.

dence at trial was not sufficient to support his conviction as a matter of constitutional due process because, he says, the State failed to disprove beyond a reasonable doubt his claim of self-defense.[2] Specifically, he argues that inconsistencies in a witness's statements, as well as Crawford's own testimony that Walker was the aggressor, should have cast doubt in the mind of a reasonable juror as to his guilt. We disagree.

When we evaluate the constitutional sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 US 307, 319 (1979) (emphasis omitted). "Our review leaves to the jury the resolution of conflicts or inconsistencies in the evidence, credibility of witnesses, and reasonable inferences to be made from the evidence." *Yarn v. State*, 305 Ga. 421, 423 (2019).

The use of deadly force is justified where a defendant "reasonably believe[d] that such force [was] necessary to prevent death or great bodily injury to himself[.]" OCGA § 16-3-21(a). "A homicide is not so justified if the force used by the defendant exceeds that which a reasonable person would believe was necessary to defend against the victim's unlawful act." *Frison v. State*, 323 Ga. 156, 160 (2025) (quotation marks omitted). "When a defendant raises a justification defense at trial, the State has the burden of disproving that defense beyond a reasonable doubt." Id.

---

[2] In his appellate brief, Crawford purports to challenge the sufficiency of the evidence supporting his "convictions," apparently referring to the guilty verdicts on the felony murder and aggravated assault counts. As detailed in footnote 1, however, Crawford was not sentenced on those counts, so his sufficiency challenge to those counts is moot. See *Milton v. State*, 318 Ga. 737, 742 n.5 (2024).

But "[q]uestions about the existence of justification are for the jury to resolve, and the jury may reject any evidence in support of a justification defense and accept evidence that a [killing] was not done in self-defense." *Goodson v. State*, 305 Ga. 246, 248 (2019).

Viewed in the appropriate light, the evidence presented at trial showed the following. Crawford, Walker, and Bobby Johnson lived together as roommates. On the night of the crimes, all three men were home; Johnson was in his room using an oxygen mask due to complications from cancer. Johnson, who testified at trial, heard Crawford and Walker arguing, then heard what sounded like the two men fighting. Walker soon entered Johnson's room. When the door opened, Walker fell to the floor, and Crawford got on top of Walker and began beating him with his hands. Crawford also struck Walker's head with a firearm. Walker was unable to move and asked Johnson for help, but Johnson's medical condition prevented him from intervening. Johnson did not seek outside assistance because he was unable to defend himself against Crawford.

Crawford continued beating Walker near Johnson's room for 25 to 30 minutes. When Crawford dragged Walker back toward the dining room, Johnson shut the door to his room. Johnson heard Crawford resume beating Walker, and the "commotion" continued for a couple of hours. Later that morning, Crawford returned to Johnson's room and reported, "I think I killed him." Crawford instructed Johnson to tell police that Crawford had been away for two weeks and did not know anything about the beating. Crawford then left the residence, and Johnson went to a nearby store to call 911. Responding law enforcement officers found Walker dead inside the home, with a "tremendous amount of blood" pooled around his head and severe trauma to his face and head. The facial trauma was so severe that fingerprinting

3

was necessary to confirm Walker's identity. Physical evidence was consistent with Johnson's account of the crimes: there were blood stains in multiple areas of the residence, including near Johnson's bedroom, and the walls in Johnson's bedroom had been damaged during the fight. When Crawford was arrested several days later, the arresting officer observed injuries on Crawford's hands but none on his face, head, or neck.

The autopsy showed that Walker died as a result of blunt force injuries to his head and neck. Walker was missing several teeth, had suffered subdural and subarachnoid hemorrhages, and had a fractured neck, resulting in a spinal cord injury that likely paralyzed him from the neck down. There were no injuries to Walker's hands consistent with Walker having struck anyone with his fists.

Crawford testified in his own defense at trial, claiming that Walker instigated a physical altercation following a verbal dispute over the use of the kitchen. Crawford claimed Walker threw the first punch but admitted he responded by striking Walker multiple times. Crawford also claimed the fight lasted only about 10 minutes and ended when Walker stopped fighting back. Crawford denied that any of the fight took place in Johnson's bedroom. According to Crawford, when he left the residence, Walker was sitting on the couch smoking a cigarette.

The evidence recounted above was sufficient to disprove beyond a reasonable doubt Crawford's claim of self-defense. As an initial matter, the only evidence supporting Crawford's self-defense claim was his own self-serving testimony, which the jury was authorized to reject. See *Goodson*, 305 Ga. at 247–48. Johnson, who was present in the residence for the entirety of the attack, testified that Crawford beat Walker for hours, long after Walker became incapacitated during the part of the attack that

4

took place in and near Johnson's room. See OCGA § 24-14-8 ("The testimony of a single witness is generally sufficient to establish a fact."). And the autopsy underscored the sheer brutality of Crawford's attack — Walker suffered multiple brain hemorrhages and a fractured neck that likely paralyzed him, and the trauma to his face was so severe as to render him unidentifiable. By contrast, Crawford displayed no apparent injuries as a result of the altercation, other than injuries to his hands consistent with beating another person. On this evidence, a rational jury could have rejected Crawford's testimony that Walker attacked him and that he was defending himself and also could have considered their disbelief of Crawford's testimony and the inconsistencies between it and Johnson's testimony as substantive evidence of guilt. See *Foots v. State*, 322 Ga. 116, 119 (2025) ("If [the jury] disbelieved [appellant's] claim of self-defense, the jury could also consider his testimony as substantive evidence of guilt where there was some corroborative evidence pointing to guilt."). A rational jury also could have concluded that, while Crawford may have initially acted in self-defense, he used excessive force when he continued beating Walker after Walker was incapacitated. See *Reddick v. State*, 321 Ga. 73, 74–75 (2025) ("Deadly force is not justified if the degree of force used by the defendant exceeds that which a reasonable person would believe necessary to defend against the victim's unlawful actions. The use of excessive force or unlawful force while acting in self-defense is not justifiable." (cleaned up)); *Willerson v. State*, 312 Ga. 369, 373 (2021) ("Given the brutality of the attack against the victim, the extent of the victim's injuries, and the fact that [the appellant] suffered no injuries in the altercation, the evidence presented by the State was sufficient to contradict the self-defense claim."). Accordingly, the evidence presented at trial was constitutionally sufficient to authorize a rational jury to reject Crawford's claim of self-defense and to find

him guilty beyond a reasonable doubt of malice murder.

2. Crawford next argues that the trial court abused its discretion by admitting other-acts evidence under OCGA § 24-4-404(b) ("Rule 404(b)"). Assuming without deciding that the admission of this evidence constituted an abuse of discretion, we conclude, in light of the overwhelming evidence of Crawford's guilt, that any error was harmless.

In a pre-trial motion, the State sought to introduce at trial evidence of Crawford's 2001 conviction for aggravated battery for purposes of showing motive and intent.[3] The trial court granted the State's motion, finding that the evidence was relevant to show Crawford's intent. At trial, the detective assigned to the 2001 case testified that the victim reported being beaten by three men while he was out walking his neighbor's dog. According to the detective, the assailants struck the victim with a two-by-four piece of wood and a brick, stomped and beat him, and urinated on him. On cross-examination, the detective clarified that the victim identified Crawford as hitting him with the piece of wood and that one of Crawford's companions was responsible for striking the victim with the brick and for urinating on him. And on redirect-examination, the detective testified that Crawford "may have said that [the victim] had a knife" and that Crawford claimed he was acting in self-defense.

"A trial court's evidentiary error requires reversal of the appellant's convictions unless it can be deemed harmless, meaning that it is highly probable that the error did not contribute to the verdict." *Nundra v. State*, 316 Ga. 1, 6 (2023) (cleaned up). In

---

[3] The State's motion also sought to introduce evidence of two other convictions, but at the hearing on the motion, the State elected to pursue only the 2001 conviction.

conducting a harmless-error analysis, we "set[ ] aside any evidence that was admitted as a result of the error" and "review the evidence de novo," "weigh[ing] the remaining evidence as we would expect reasonable jurors to have done so as opposed to viewing it all in the light most favorable to the jury's verdict." *Troy v. State*, 312 Ga. 860, 862 (2021) (cleaned up). When evidence is erroneously admitted under Rule 404(b), its admission may be found harmless where, as a general matter, "the properly admitted evidence was so strong that the prejudicial effect of the other-acts evidence had no significant influence on the guilty verdicts." *Nundra*, 316 Ga. at 6 (cleaned up). Such is the case here.

The evidence of Crawford's guilt was overwhelming, and, even in the absence of evidence of the 2001 assault, it is highly unlikely that the jury would have accepted Crawford's self-defense claim. It is undisputed that Crawford beat Walker. Crawford admitted as much at trial, though he claimed that Walker was the aggressor and that the beating lasted for only a short period of time. But Johnson's testimony — corroborated by physical evidence at the scene — undermined Crawford's account of the crimes. Moreover, the jury heard unrebutted testimony from the medical examiner regarding the extensive grievous injuries Crawford inflicted upon Walker, testimony that strongly supported a finding that Crawford's use of force was excessive and, thus, unjustified, regardless of which man was the aggressor.

To be sure, evidence of the 2001 assault "undoubtedly was somewhat damaging" to Crawford given that it implicated him in a separate incident in which a victim was also beaten. *Troy*, 312 Ga. at 863 (quotation marks omitted). But the evidence against Crawford related to Walker's death was "so powerful" that any error in the admission of the 2001 assault evidence did not harm

Crawford and does not justify reversal. Id. (quotation marks omitted). See also *Moore v. State*, 307 Ga. 290, 292–94 (2019) (any error in admitting other-acts evidence under Rule 404(b) was harmless where "jury had reason to be skeptical of [the appellant's] theory of events offered at trial," which was contradicted by significant other evidence presented at trial).[4]

3. Crawford contends that the trial court abused its discretion by limiting his efforts to cross-examine Johnson about his drug use on the night of the crimes. In advancing this enumera-

---

[4] Our conclusion that the admission of the 2001 assault evidence was harmless should not be read as approving its admission. In fact, it appears that the trial court likely abused its discretion by admitting this evidence for reasons this Court has highlighted in this context before:

> [A]lthough Appellant put his intent at issue by pleading not guilty, the State's need for evidence to prove his intent was extremely low because his sole defense at trial was self-defense. The State was required to disprove self-defense, but the other acts evidence was minimally probative on that question. As we have previously explained, when a defendant did not deny the intent to inflict injury, but claimed authority for the act under the legal excuse of reasonable fear of immediate serious harm to himself, the only factual issue in the case was whether self-defense was the reason for the admitted act. The fact that Appellant may have committed violent crimes against other people many years earlier had nothing to do with his reason for [killing] the victims, and really has no purpose other than to show Appellant's propensity toward violence.

*Strong v. State*, 309 Ga. 295, 310 (2020) (cleaned up). Indeed, the State's own argument for admitting the evidence underscores this point. According to the State, Crawford's "acting with unlawful intent on a previous occasion in violently attacking others … makes it less likely that he acted with lawful intent when he committed an aggravated assault here[.]" **(**Emphasis removed.) This is nothing more than a propensity argument, plain and simple.

tion of error, Crawford provides little indication of the factual basis for the claim — he includes a record citation only to his motion for mistrial made the day after Johnson testified without identifying a specific objected-to ruling from the trial court. As best we can tell,[5] this enumeration of error arises from the following exchange: Crawford asked Johnson, "What are you smoking at night?" The State objected to that question on relevance grounds, and following an off-the-record discussion, the trial court sustained the objection. Upon resuming his cross-examination of Johnson, Crawford asked whether Johnson took medication on the night of the crimes. Johnson responded affirmatively and, after further questioning, indicated that he used his inhaler and took his "blood pressure pill." Crawford then concluded his cross-examination. Thus, the record reflects that Crawford was permitted to question Johnson about legal drug use on the night of the crimes.

To the extent Crawford argues that he should have been permitted to question Johnson about illegal drug use on the night of the crimes, we are unable to determine from this record whether the trial court circumscribed any such effort. The record reflects only that the trial court sustained the State's objection to Crawford's question about Johnson's general drug use — that is, what Johnson "was smoking at night." There is no indication whether that ruling precluded questioning about illegal drug use on the night of the crimes, and Crawford has not cited any portion of the record that reflects such a ruling. As such, Crawford has not met his burden of showing error by the record, and this claim fails. See *Dugar v. State*, 314 Ga. 376, 385 (2022) ("[T]he burden

---

[5] Crawford raised this claim of error in his amended motion for new trial, and the trial court's order denying that motion identifies this portion of the record as forming the factual basis for this claim.

is on the party alleging error to show it by the record," and "this Court is not required to scour the record for support for an appellant's arguments." (cleaned up)).

4. Finally, Crawford argues that the trial court erred by denying his motion for mistrial, which was based on the court's limiting his cross-examination of Johnson, as discussed in Division 3. The record reflects, however, that Crawford waited until the day after Johnson testified to move for a mistrial. Because "[a] motion for mistrial must be promptly made as soon as the party is aware of the matter giving rise to the motion," Crawford's failure to "make a contemporaneous motion for a mistrial" at the time the trial court sustained the State's objection means he "has waived review of this issue on appeal." *Neloms v. State*, 313 Ga. 781, 785 (2022). As such, this claim fails.

*Judgment affirmed. All the Justices concur, except Warren, P. J., not participating.*