304 Ga. 56
FINAL COPY

S18A0779.  MITCHELL v. THE STATE.

BOGGS, Justice.

In October 2012, a jury found Charles Mitchell guilty of malice murder, two counts of felony murder, armed robbery, aggravated assault, arson, concealing the death of another, making a false statement, and possession of a firearm during commission of a felony in connection with the murder of Gboye Jalloh.[1] Mitchell was sentenced to two life terms plus five years. His amended motion for new trial was denied, and Mitchell appeals, asserting as his sole enumeration of error remarks made by the trial court during preliminary instructions to the jury venire. For the reasons stated below, we affirm.

Construed to support the verdict, the evidence showed that Mitchell was

---

[1] The crimes occurred on April 1, 2010. On June 29, 2010, a DeKalb County grand jury indicted Mitchell for malice murder, two counts of felony murder, armed robbery, aggravated assault, arson in the second degree, concealing the death of another, making a false statement, and possession of a firearm during commission of a felony. Mitchell was tried before a jury from October 2 – October 11, 2012. The jury found Mitchell guilty on all counts. The trial court merged the felony murder and aggravated assault counts into the malice murder count, and sentenced Mitchell to two consecutive life sentences plus five years. Mitchell's amended motion for new trial was denied on December 4, 2017, although the trial court amended the verdict to vacate rather than merge the felony murder counts. Mitchell's notice of appeal was filed on December 26, 2017, and the case was docketed in this Court for the April 2018 term. The case was submitted for decision on the briefs.

involved in a dispute with the victim over money. On April 1, 2010, Mitchell was at his house with two friends, co-indictees Reggie May and Victor Holmes,[2] when he sent a text message to the victim, ostensibly inviting him to meet some "college girls," and told him to "come by yourself." When the victim arrived, Holmes left in his vehicle. Mitchell and May got into the victim's rental car, and the victim said that he wanted to smoke before going to meet the girls. Mitchell knew of an unfinished subdivision nearby, so they drove into the entrance and parked. As they sat in the parked car, Mitchell produced a pistol, said, "April fools, April fools," and pulled the trigger, but the gun did not fire. Mitchell and the victim struggled over the gun until Mitchell shot and wounded the victim, then pulled him into the passenger seat. May asked Mitchell what was going on, and he responded, "We trying to get this check, man." At this point, Holmes reappeared, driving his car, and followed Mitchell as he drove the victim's car to a nearby park. After demanding, "Where the cards at?" Mitchell rifled the moaning and cursing victim's wallet for gift cards and obtained from him the identification code for the cards. Mitchell and Holmes had a discussion

---

[2] Holmes pled guilty before trial but did not testify. May testified for the State pursuant to an immunity agreement, and the charges against him (arson and concealing a death) were later nol prossed.

which May could not hear; they then dumped the victim into the trunk of his car, and Mitchell shot him twice in the head. The three men left in Holmes' car, but Mitchell suddenly exclaimed that he had touched the trunk of the victim's car. They drove to a gas station where Mitchell put some gas in a cup. Mitchell and Holmes dropped May off at his house, and told him to "say nothing, they don't want to have to do nothing to [May's] mom or [his] family." Mitchell and Holmes then returned to the scene, where Mitchell set the car on fire by throwing a gasoline-soaked rag in the trunk. Firefighters responding to a report of a fire discovered the victim's body in the car trunk, burned beyond recognition. The medical examiner testified that he could determine, despite the extensive destruction of the body, that the cause of death was two gunshot wounds to the head. Police interviewed Mitchell, and he denied having seen the victim recently; after further investigation police confronted Mitchell, who changed his story and stated that he shot the victim in self-defense and that Holmes helped him burn the body.

1. Although Mitchell has not raised the sufficiency of the evidence in his appeal, we note that the evidence was sufficient to support the jury's guilty verdicts under Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560)

3

(1979).

2. In his sole enumeration of error, Mitchell contends the trial judge erred in her statements made during the court's preliminary questioning of the venire pursuant to OCGA § 15-12-164:

> Have any of you, for any reason, formed or expressed any opinion in regard to the guilt or innocence of the accused, Charles Mitchell? If so, please raise your hand.

> Have any of you any prejudice or bias resting on your mind, either for or against the accused, Charles Mitchell?

> Is your mind perfectly impartial between the State, that is the district attorney, and the accused, Mr. Charles Mitchell? So everybody's hand should have gone up. Let me ask that question again. Is your mind perfectly impartial, that is, you have not prejudged the case, you have not formed an opinion, between the State and the accused?

> Is everyone's hand up?  All right.

At the hearing on Mitchell's amended motion for new trial, the trial judge explained that the court first asked if the jurors had any bias or prejudice, and no one raised a hand, but when asked if they were impartial, again no one raised a hand. Faced with this contradiction, the trial judge concluded that the jurors were confused by the question and did not understand the meaning of impartial, that the statement complained of was a comment on the fact that the responses

4

to the second and third questions were contradictory, and that once the question was rephrased, the jurors responded by raising their hands. The trial court therefore denied the motion for new trial on this ground.

(a) Mitchell contends that the trial court's comments violated OCGA § 17-8-57. At the time of Mitchell's trial in 2012, that Code section provided in its entirety:

> *It is error for any judge in any criminal case, during its progress or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused.* Should any judge violate this Code section, the violation shall be held by the Supreme Court or Court of Appeals to be error and the decision in the case reversed, and a new trial granted in the court below with such directions as the Supreme Court or Court of Appeals may lawfully give.

(Emphasis supplied.) This Code section was amended by Ga. L. 2015, p. 1050, § 1, which slightly revised the first sentence of the former Code section. That sentence now provides:

> It is error for any judge, during any phase of any criminal case, to express or intimate to the jury the judge's opinion as to whether a fact at issue has or has not been proved or as to the guilt of the accused.

OCGA § 17-8-57 (a) (1). The remainder of the Code section as amended provides in more detail the duties of a party to object to a violation of subsection

5

(a) (1), and the consequences of that violation. Under the revised Code, only if the judge should "express an opinion as to the guilt of the accused" is the grant of a motion for new trial mandated. OCGA § 17-8-57 (c). Otherwise, failure to make a timely objection as provided by subsection (a) (2) precludes appellate review except for plain error. OCGA § 17-8-57 (b). Because Mitchell failed to object to the trial court's statements here, he naturally asserts that we should apply the former version in effect at the time of trial, which would, if violated, mandate a new trial. But, because the trial court's comments clearly do not violate either the former or the current version of OCGA § 17-8-57, we decline the invitation to address the question of retroactivity. See, e.g., Brown v. State, 302 Ga. 454, 463 (3) n.4 (807 SE2d 369) (2017) (need not decide because comment did not violate Code section); Pyatt v. State, 298 Ga. 742, 747 (3) n. 9 (784 SE2d 759) (2016) (no reversible error even under former Code).

Assuming without deciding that the trial judge did "express or intimate" an "opinion" concerning the potential bias of members of the venire, she clearly made no statement "as to what has or has not been proved or as to the guilt of the accused," or "whether a fact at issue has or has not been proved or as to the guilt of the accused." To be sure, both the current and former provisions of

6

OCGA § 17-8-57 apply to voir dire. OCGA § 17-8-57 (a) (1) ("any phase of any criminal case"); <u>Sales v. State</u>, 296 Ga. 538, 541 (2) (a) (769 SE2d 374) (2015) (applying former Code; statement during voir dire that crime occurred in county violated Code section by expressing opinion that venue had been proved or was not at issue). And, the scope of either provision necessarily includes the trial court's statements while giving the statutorily required preliminary instructions during voir dire. However, the statements made here clearly did not implicate or otherwise touch on any fact at issue in the case, nor did they even arguably approach a comment on the guilt of the accused. As a result, neither the former nor the current OCGA § 17-8-57 applies here.

(b) Mitchell also contends that the trial court committed plain error by instructing the jurors not to admit partiality, and instructing them as to what their answer should be. This, Mitchell asserts, deprived him of his due process right to an impartial jury under the United States and Georgia Constitutions. See <u>Ellington v. State</u>, 292 Ga. 109, 123-124 (7) (b) (735 SE2d 736) (2012) (due process requires sufficient voir dire to allow parties and trial court to elicit juror bias). As Mitchell concedes, however, because appellant's trial counsel did not object and ask the court for a curative instruction, a plain error analysis applies

7

under the four-part test outlined in State v. Kelly, 290 Ga. 29, 33 (2) (a) (718 SE2d 232) (2011).

In conducting a plain error analysis,

[f]irst, there must be an error or defect — some sort of deviation from a legal rule — that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error — discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

(Citations, punctuation and emphasis omitted.) Kelly, supra, 290 Ga. at 33 (2) (a). Pretermitting whether Mitchell met his burden with respect to the first two prongs, he has failed to meet the requirements of the third.[3] After the statement complained of, the voir dire process continued. The State informed the jurors

---

[3] Mitchell argues that we should presume harmful error, citing Henderson v. State, 251 Ga. 398, 403 (306 SE2d 645) (1983), holding that when a defendant has been deprived of the statutory right to examine prospective jurors on voir dire, the burden is on the State to show that the error was harmless. But Henderson did not involve plain error or the failure of an appellant to interpose a timely objection, and is thus inapplicable to our analysis of the four-prong test of Kelly. Our decisions make clear that Mitchell bears the difficult burden of satisfying that test, and "*he* must demonstrate that it affected the outcome of the trial court proceedings." (Citation and punctuation omitted; emphasis supplied.) Kelly, supra, 290 Ga. at 33 (2) (a).

that "there are no right or wrong answers to any of the questions we ask," and both the State and Mitchell's counsel further examined the panel regarding potential sympathy or bias for or against Mitchell or the victim, and whether any venire member felt that he or she could not be fair and impartial.

Mitchell contends that the potential jurors were intimidated into silence and failed to indicate their potential biases because the comments from the bench "carry infinitely more authority" due to the judge's great power in the courtroom, and the attorneys' questions could not "override instructions or comments from the judge." But during the further questioning by counsel, Mitchell's counsel received four affirmative responses to a question regarding sympathy for the victim affecting the ability to be fair and impartial, and after another venire member asked if counsel could repeat a question, received an additional affirmative response. And after further inquiry regarding whether potential jurors would be biased against Mitchell if he failed to testify, regardless of an instruction by the trial court to the contrary, six venire members responded that they would be, and one was not sure. Given this clear willingness on the part of potential jurors to respond truthfully to questions regarding bias, even if that was contrary to the trial court's instructions, Mitchell has not shown

9

that the trial court's earlier comments affected the outcome of the proceedings, has not satisfied the third prong of Kelly, and therefore has failed to demonstrate plain error.

Judgment affirmed. All the Justices concur.

Decided June 18, 2018.

Murder. DeKalb Superior Court. Before Judge Jackson.

Lynn M. Kleinrock, for appellant.

Sherry Boston, District Attorney, Lenny I. Krick, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Michael A. Oldham, Assistant Attorney General, for appellee.