**FIFTH DIVISION
MCFADDEN, P. J.,
GOBEIL and PINSON, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**June 8, 2022**

# In the Court of Appeals of Georgia

A22A0283. HERRINGTON v. THE STATE.

McFADDEN, Presiding Judge.

After a jury trial, Jeffrey Dewayne Herrington was convicted of hit and run and tampering with evidence. On appeal, he argues that the trial court erred in failing to give one of his requested jury charges. But the charge pertained to a statute that does not apply to the circumstances of this case. Herrington also argues that the trial court improperly commented on a disputed fact, but he has not shown that he was harmed by the allegedly improper comment. So we affirm.

1. *Facts and procedural history.*

Viewed in the light most favorable to the verdict, see *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979), the trial evidence showed that in the early morning hours of September 16, 2017, a motorist found a dead body,

dressed in dark clothing, on the right shoulder of a busy section of highway that had no artificial lighting. Law enforcement officers determined that the victim had been hit by a passing vehicle the previous night and had died as a result of her injuries. No one had previously reported the body. The point of impact could not be determined, and there were no skid marks near the body, so the speed of the vehicle that struck the victim could not be established.

Subsequently, an acquaintance of Herrington notified law enforcement that she had seen a news report about the incident and suspected Herrington might be involved. On the afternoon of September 16, 2017, she had noticed damage to the right side of Herrington's vehicle: a broken front headlight and a dented front fender. She had not seen that damage the day before, and when she asked Herrington about it, Herrington told her he had hit a deer.

Law enforcement officers went to Herrington's residence, where they questioned him and looked at his damaged vehicle, which was parked in his garage. They found external parts from the front of the vehicle on the garage floor. Herrington told the officers that he believed he had hit a deer. He went with them to the police station and, after being given *Miranda* warnings, see *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966), he gave a statement.

At trial, Herrington testified that on the night of September 15, 2017, he hit something with his vehicle while changing lanes, causing his passenger-side mirror to pop out of place and his right headlight to stop working. He was not sure what he had hit. Herrington pulled to the side of the road and looked in his rearview mirror, but did not see anything. He then turned around and drove back by the scene of the impact but again did not see anything. He did not get out of his vehicle.

Instead, Herrington left the scene and drove to his cousin's house. There, a visibly shaken Herrington told his cousin that he had hit "something" with his vehicle. He, his cousin, and a friend then returned to the area to try to determine what he had hit. Although they drove by the scene of the impact using high beams, they saw nothing. Herrington's friend theorized that he had hit a deer and Herrington "ran with that [theory]."

The jury found Herrington guilty of hit and run and tampering with evidence. The jury found Herrington not guilty of three other charged offenses: homicide by vehicle in the second degree, failure to exercise due care toward a pedestrian, and driving with a suspended license. The trial court denied Herrington's motion for new trial.

2. *Jury charge.*

Herrington argues that the trial court erred by refusing to give a jury charge he requested. "To authorize a requested jury instruction, there need only be slight evidence to support the theory of the charge, and the necessary evidence may be presented by the [s]tate, the defendant, or both. Whether the evidence presented is sufficient to authorize the giving of a charge is a question of law." *Orr v. State*, 312 Ga. 317, 320 (2) (862 SE2d 513) (2021) (citations and punctuation omitted). As detailed below, the evidence in this case did not authorize the giving of the charge at issue.

Herrington requested a charge on OCGA § 40-6-274. That statute creates a broad exemption from criminal liability under the hit-and-run statute, OCGA § 40-6-270, and from similar legal duties to stop and report an accident and from liabilities for failure to do so. The exemption obtains if no one is injured, no one other than the driver is involved, and no property other than the driver's is involved. OCGA § 40-6-274 provides:

> Any other provision of this article or any other law to the contrary notwithstanding, the driver of any vehicle involved in a traffic accident in which there is no personal injury or in which no second party and no property of a second party is involved shall not have the duty to stop or immediately report such accident, and no driver shall be prosecuted for his failure to stop or immediately to report such accident. This Code

4

section shall not abrogate or affect a driver's duty to file any written report which may be required by the local law enforcement agency.

The dispositive question on appeal is whether the evidence in this case invoked the statute's exemption from duty and protection against prosecution. This case does not "involve[ ] a traffic accident in which there is no personal injury or in which no second party and no property of a second party is involved[.]" OCGA § 40-6-274. Herrington argues that OCGA § 40-6-274 applies because there is evidence that he did not know he had hit a person. We decline to read a knowledge requirement into OCGA § 40-6-274.

"In interpreting statutes, we presume that the General Assembly meant what it said and said what it meant. . . . [W]e must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would." *Langley v. State*, __ Ga. __ (2) (__ SE2d __) (Case No. S21G0783, decided Feb. 1, 2022) (citations and punctuation omitted). "If the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning is at an end." *Major v. State*, 301 Ga. 147, 150 (1) (800 SE2d 348) (2017) (citation and punctuation omitted).

Under the plain language of OCGA § 40-6-274, its exemption applies only to "a traffic accident in which there is no personal injury or in which no second party and no property of a second party is involved." Herrington would have us extend the exemption beyond the boundaries established in the statutory text to cases where there *is* personal injury or the involvement of a second party or second party's property, but the driver does not know that. Certainly, our General Assembly could have enacted a statute that extends the protections of OCGA § 40-6-274 to such drivers. But they are not covered under a natural and reasonable reading of the text of the statute, and "we do not have the authority to rewrite statutes." *Riley v. State*, 305 Ga. 163, 168 (3) (824 SE2d 249) (2019).

This is not a situation where we must read a "knowledge" requirement into OCGA § 40-6-274 to give that statute meaning or avoid an absurd result. See generally *Riley*, 280 Ga. at 168 (3) (appellate court "may construe statutes to avoid absurd results" and "must presume that statutory language has some substantive meaning"). As written, the statute provides an exemption from duty and protection from prosecution to drivers in certain types of accidents, whether or not the driver knows that the accident fell into one of the delineated categories. A driver's knowledge that he falls within the statute is simply not determinative.

6

And even if we were to so expand the exemption under OCGA § 40-6-274, it would not be at all clear that Herrington would fall under its protection. Herrington admitted that he realized he had hit something, which he believed to be a deer. See OCGA § 27-1-3 (b) ("The ownership of, jurisdiction over, and control of all wildlife, as defined in this title, are declared to be in the State of Georgia.").

So Herrington's lack-of-knowledge argument did not entitle him to invoke the exemption under OCGA § 40-6-274. But knowledge was at issue. It is an element of the offense for which he was tried and convicted.

He was charged under OCGA § 40-6-270, the hit-and-run statute. That statute, which is part of the same article as OCGA § 40-6-274, imposes a duty to stop and take certain actions upon drivers involved in accidents "resulting in injury to or the death of any person or in damage to a vehicle which is driven or attended by any person[.]" OCGA § 40-6-270 (a). And it provides for criminal liability for a driver who fails to satisfy that duty. OCGA § 40-6-270 (b), (c) (1).

But to be criminally liable under that statute, the driver must "*knowingly* fail[ ] to stop and comply with the requirements of [the statute]." OCGA § 42-6-270 (b) (emphasis supplied). This means that, to commit the offense of hit and run, the driver must have "knowledge of an accident that resulted in at least one of the three

7

enumerated consequences: injury, death, or damage." *State v. Mondor*, 306 Ga. 338, 344 (1) (830 SE2d 206) (2019).

Because OCGA § 40-6-270 and OCGA § 40-6-274 relate to the same subject matter, we must construe them together, harmonizing them wherever possible. See *Langley*, __ Ga. at __ (2). Doing so, it is clear that if a driver is involved in an accident resulting in injury, death, or damage to the attended vehicle of a second party, that driver has a duty under the hit-and-run statute, OCGA § 40-6-270, to stop and take certain actions and may be held criminally liable for failing to do so — if the state can prove that the driver knew of the facts giving rise to the duty. If, on the other hand, a driver is involved in an accident that injures no one or an accident involving neither a second party nor a second party's property, then the exemption under OCGA § 40-6-274 applies and that driver has no duty to stop or immediately report the accident and the state cannot prosecute that driver for failing to do so.

The evidence of a fatality in this case established the first circumstance, addressed in OCGA § 40-6-270, the hit-and-run statute, and not the second circumstance, addressed in OCGA § 40-6-274, the exemption statute.

So Herrington was not entitled to a jury charge on OCGA § 40-6-274. But the trial court did instruct the jury that the jury must find all of the elements of hit and run

8

charged in the indictment, including the requirement that Herrington "knowingly" failed to stop and comply with his statutory obligations under OCGA § 40-6-270. See *Miller v. State*, 289 Ga. 854, 861 (8) (717 SE2d 179) (2011) (charge is not erroneous if it "read[s] the indictment in full to the jury and charge[s] the jury that the [s]tate must prove each element of the crime as charged beyond a reasonable doubt"). And Herrington conceded at the hearing on his motion for new trial that the elements of hit and run had been properly charged.

That charge afforded Herrington the foundation to which he was entitled for his lack-of-knowledge argument. And his counsel argued to the jury that Herrington lacked the knowledge necessary to be convicted of hit and run. Under these circumstances, the trial court did not err in declining to give Herrington's requested charge on OCGA § 40-6-274.

3. *Trial court comment.*

Herrington argues that the trial court erred when, in his charge to the jury, the trial court made a comment that Herrington characterizes as an improper expression of the trial court's opinion on whether a fact in issue had been proved. But he has not shown reversible error.

9

The trial court made the comment at issue in the portion of the charge addressing the two statements Herrington had made to law enforcement officers: his initial statement to the officers at his home, and his later statement to them at the police station, after he had been Mirandized. The trial court stated:

> Now, two statements that the defendant allegedly made, *one which was made while in custody*, have been offered for your consideration. Before you may consider this as evidence for any purpose, you must determine whether each of the defendant's statements were voluntary and, if the statement was given in custody, whether the defendant was properly advised of his constitutional rights.

(Emphasis supplied.) Herrington argues the comment that he made one of the statements "while in custody" violated OCGA § 17-8-57 (a) (1), which provides that "[i]t is error for any judge, during any phase of any criminal case, to express or intimate to the jury the judge's opinion as to whether a fact at issue has or has not been proved[.]"

The state argues that the trial court's comment in the jury charge did not violate OCGA § 17-8-57 (a) (1) because the question of whether Herrington was in custody when he gave his statement at the police station was not a disputed fact at issue in this case. See *Jenkins v. State*, 354 Ga. App. 674, 679 (3) (839 SE2d 698) (2020) ("a

10

statement by a trial court concerning a fact that is uncontested or is not in dispute does not constitute a violation of OCGA § 17-8-57") (citation and punctuation omitted). This is not quite accurate. The record shows that the fact that Herrington was in custody was disputed, *by the state*.

But even if the trial court's comment violated OCGA § 17-8-57 (a) (1), Herrington is not entitled to reversal. Generally, an appellant must show harm as well as error to obtain a new trial, *Hendricks v. State*, 283 Ga. 470, 473 (3) (660 SE2d 365) (2008), and under the current version of OCGA § 17-8-57 this general rule applies to violations involving comments about whether facts at issue have been proved. Cf. *Mitchell v. State*, 304 Ga. 56, 58 (2) (a) (816 SE2d 9) (2018) (the current version of OCGA § 17-8-57 mandates a new trial only if the improper comment concerns the guilt of the accused).

And Herrington has not shown harm. The purpose of establishing whether he was in custody when he gave the statement was to determine whether the officers had to advise him of his constitutional rights. Because it is undisputed that they *did* advise him of those rights, the jury was entitled to consider Herrington's statement whether or not he was actually in custody when he gave it.

*Judgment affirmed. Gobeil and Pinson, JJ., concur*.

11